## KATZENBERGER *v.* LAWO.

## (*Jackson.* May 2, 1891.)

1. RAILWAY COMPANIES. *Not excused from observance of statutory precautions while running trains on streets.*

Railway companies must comply strictly with all statutory precautions for the prevention of accidents on railroads, even while operating their trains over tracks laid, by lawful permission, in the streets of a populous city.

Code construed: §§ 1298–1300 (M. & V.); §§ 1166–1168 (T. & S.)

Cases cited: Patton *v.* Railroad, 89 Tenn., 370; Pratt *v.* Railroad, 85 Tenn., 13.

2. SAME. *Dummy line is a railroad.*

A dummy line, over which trains are drawn by a small steam-engine for transportation of passengers only, whether operated within or without the limits of a municipality, is a railroad within the meaning of the statutes prescribing certain precautions for prevention of accidents on railroads.

Code construed: §§ 1298–1300 (M. & V.); §§ 1166–1168 (T. & S.).

Case cited and approved: Railroad *v.* Doyle, 88 Tenn., 747.

3. SAME. *Not excused for non-compliance where signals are forbidden by municipal ordinance.*

Railway companies are not excused from strict compliance with the statutory precautions for prevention of accidents, when operating their trains within the limits of a city, although the giving of the signals—as, *e. g.,* the blowing of the whistle—is forbidden and declared a misdemeanor by ordinance of the municipality.

4. MUNICIPAL CORPORATIONS. *Powers of, to regulate running of railway trains.*

A municipal corporation has not power "to suspend, alter, or change the general statutes of the State regulating the running of railroad

Katzenberger *v.* Lawo.

trains," under its charter authority "to permit and regulate the laying of railroad tracks of iron, and the passage of railroad cars through the taxing district, and to remove such railroad track if it obstructs travel, or does not conform to the laws of the taxing district; and to make all suitable and proper regulations in regard to the use of the streets for street-cars, and to regulate the running of the same so as to prevent injury or inconvenience to the public."

Acts construed: Acts 1879, Ch. 84.

5. SAME. *Same.*

And therefore an ordinance of such municipality forbidding the necessary blowing of the whistle of steam-engines and declaring it a misdemeanor, is a nullity.

Case cited and distinguished: 70 Ind., 569.

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

GANTT & PATTERSON for Katzenberger.

T. W. & R. G. BROWN and BOLTON SMITH for Lawo.

LURTON, J. By a collision on one of the streets of Memphis between a wagon driven by Lawo and a dummy-train of street-cars he sustained such bodily injuries as have resulted in a judgment for $3,000 against plaintiff in error, who, as receiver, was operating the railway at the time.

The Circuit Judge charged the jury that the statutory precautions required to be observed by railroads, and contained in Subsection 4 of § 1166, Code of Tennessee, applied to the movement of all railway trains upon the streets of Memphis, and that a dummy-line was a railroad within the meaning of this provision.

Each of these propositions has been assigned as error.

Counsel have urged very forcefully that when, by legislative and municipal consent, a railway has been laid longitudinally upon ·the streets of a city, that it is not practical to observe the requirements of the statute in reference to stopping the train whenever any person, animal, or other obstruction appears upon the road; that under such circumstances a railway is lawfully upon the street, and that to construe the statute as applicable when thus upon the streets will prevent the movement of trains, inasmuch as at all times persons and animals or other obstructions will be upon the road and within observation of the lookout upon the locomotive.

The statute was enacted for the purpose of preventing accidents. It prescribes precautions which, so far as they relate to the duty of watching the track and the duty of avoiding collision with persons or animals on the· track, are identical with the common law duty of diligence. *Patton, Adm'r,* v. *Railway Co.,* 5 Pickle, 370; *Railroad* v. *Pratt,* 85 Tenn., 13.

If these precautions are observed, the statute relieves the company of responsibility. If it fails to observe them, the statute imposes liability. All other questions out of the way, the rule would be the same regardless of the statute. With respect to the burden of proof and the effect of contributory negligence, the statute changes the rule of the common law.

If there be any strength in this argument, it would practically repeal the statute; for the same difficulty in literally observing it will be found to exist between country stations, the track in the day-time being very generally used as a walk-way. Practically, it is unnecessary to stop the train when an object appears on the track save in a very few instances. The statute only requires it when *necessary*, and experience demonstrates that this necessity seldom arises. The track is generally cleared by signals, and no liability arises from failure to stop unless such failure has resulted in an accident. What the common law would impose as ordinary care when necessary to avoid injury to the property of another, or an accident to a person upon the track, is not so difficult of accomplishment when embodied in legislation as to authorize a construction suspending it when the necessity for its observance is most necessary.

When a railroad is longitudinally upon the streets of a city, the danger of accidents is obviously increased. Under such circumstances there should be a corresponding increase of diligence.

The railway is upon the street of its own volition. The economical acquisition of the right of way has been regarded as of greater benefit than the dangers incident to a road so placed. But the use of the street by the railway is not exclusive. The public have equal rights. To say that under such circumstances the statute should be held inoperative, would be to say that the. Legislature intended that it should not apply just where the probability of accident is greatest. It will doubtless be found necessary, where a road is upon the street of a city, to so regulate the speed that the train can be stopped within a short distance in case of necessity.

A train pulled by a small engine called a dummy, although exclusively engaged in carrying passengers, is a railroad within the meaning of the statute prescribing precautions to be observed by railroads. The evil intended to be remedied pertains as much to this sort of railway as to the ordinary railroad of commerce. In the case of *Railway* v. *Doyle*, 4 Pickle, 747, we had occasion to consider the resemblance and difference between the dummy-line and the commercial railway. For the reasons there stated, we think the statutory precautions against railroad accidents apply to dummy-lines whether run within or without the limits of a municipality.

The third assignment of error is for the refusal of the Court to charge the jury that, under the ordinances of the city of Memphis, the blowing

of a whistle by a railway engine was a misdemeanor, and that therefore the statutory precaution of blowing the whistle when a person or animal appeared on the road need not be observed within the city limits. There was no error in this. By the Act creating the present government in force in the city of Memphis, power was given the municipality "to permit and regulate the laying of railroad tracks of iron, and the passage of railroad cars through the taxing district, and to remove such railroad track if it obstructs travel, or does not conform to the laws of the taxing district; and to make all suitable and proper regulations in regard to the use of the streets for street-cars, and to regulate the running of the same so as to prevent injury or inconvenience to the public." Acts 1879, Chap. 84, page 100.

Under this authority, the municipality has enacted an ordinance regulating the running of trains through the city. It seems wise and salutary in the main. Among other things prohibited is the blowing of the steam-whistle. In place of this, the bell is required to be rung and watchmen are required to be stationed at street-crossings. The ordinances of this municipality are of no authority where they conflict with the general law of the State. So far as this ordinance conflicts with the Code, § 1166, prescribing precautions against accidents, this ordinance is a nullity.

The authority given in the Act creating the taxing district, and which we have quoted, gives

no authority to suspend, alter, or change the general statutes of the State regulating the running of railroad trains. To support the contention of counsel as to this last request, we have been referred to Patterson on Railway Accident Law. This author does say, concerning statutory signals, that, "of course, the railway may excuse its non-performance of the statutory duty by showing that the duty was, on the particular occasion, omitted within the boundary of a municipality whose ordinances—lawfully enacted—forbade the giving of signals within its limits." Sec. 163.

The author cites the case of *Penn. R. R. Co.* v. *Hensil* (70 Ind., 569, and 6 Am. & Eng. R. R. Cases, 79). This case seems to support the text. But on looking to the Code of Indiana, regulating the giving of signals at road - crossings, it is found that the Act provides "that nothing therein contained shall be so construed as to interfere with any ordinance or by-law that has been or may be passed by any city or town regulating the management or running of engines or trains within such city or town." Code of Indiana, 1881, § 2178.

We have no such exception made in our statute. The other request refused had been substantially given, and the fifth assignment is overruled.

Judgment affirmed.