STATE, *ex rel.* CLEVE BAKER, v. WILLIAM J. McCARTHY, Acting Chief of Police of the City of Miami.

166 So. 280.

Division B.

Opinion Filed February 1, 1936.

Rehearing Denied March 12, 1936.

*J. F. Gordon* (of Miami) and *B. K. Roberts, H. H. Wells* and *William K. Whitfield* (all of Tallahassee), for Plaintiff in Error;

*J. W. Watson, Jr.,* and *Abe Aronovitz,* for Defendant in Error.

BUFORD, J.—The writ of error in this case brings for review a judgment in habeas corpus remanding the petitioner to the custody of the sheriff.

The affidavit filed in the municipal court contained three counts. It is only necessary for the purposes here involved to quote one of the counts of the affidavit, which is exhibited here by recitation contained in the warrant under which petitioner is held. That is, as follows:

"On the 13th day of December, 1935, at and in the City of Miami, one, Clive Baker, did unlawfully set up a gambling device commonly known as a slot machine, at which a game of chance was played for money, in that he did on said date, aforesaid, in said city aforesaid, set up a certain gambling mechanical device in which persons were solicited and permitted to insert in said mechanical device certain coin or coins, namely: five-cent pieces commonly known and called nickels, lawful money of the United States of America, in consideration of which certain nickel or nickels so deposited the person or persons so depositing same were allowed to pull a certain lever or handle on said mechanical device whereby certain wheels were set in motion so that certain sums of money already placed in said machine would automatically pay off in excess of the coin inserted if said wheels when put in motion should stop in a certain order and thereupon the person so inserting coins in said machine and setting said wheels in motion by means of said lever and handle

would win a prize consisting of money, to-wit: five-cent coins commonly called nickels in numbers and amounts depending upon the position in which said wheels so set in motion should stop, and if said wheels did not stop in the order requiring payment of money in accordance with previous understanding that the person playing said machine and inserting the coins therein would receive nothing, and said Cleve Baker, defendant herein, thereupon would benefit to the extent of certain interests in the sums of money that he received as the result of the person or persons receiving nothing, all in violation of Section 686 of the Code of the City of Miami, Dade County, Florida, and against the peace and dignity of the City of Miami, Florida."

It is contended by the petitioner that the affidavit and warrant charged no criminal offense against the petitioner because of the provisions of Chapter 17,257, Acts of the Legislature of 1935, while the municipality contends that it has the power under its Charter Act to prohibit and punish gambling of all sorts and that prior to the enactment of Chapter 17,257, *supra,* the municipality had duly enacted an ordinance prohibiting gambling in the city and that the legislative Act above referred to did not create an immunity in favor of the petitioner against prosecution for gambling alleged to have been committed in the operation of a slot machine.

Section 1 of the legislative Act is as follows:

"It shall be unlawful for any person or persons, corporation or corporations, to set up for operation, operate, lease or distribute for the purpose of operating, any coin-operated device as defined in Section Two of this Act, without first having obtained a license therefor. This Act, however, does not apply to machines or devices displayed or demon-

strated by manufacturers, distributors, salesmen and agents for sales purposes."

It will be observed that this section makes it unlawful to operate the coin-operated devices therein described without first having obtained a license therefor. It could not be successfully contended or maintained that the Act does not legalize the operation of such coin-operated devices as are therein described when the licenses provided for the operation thereof have been paid.

The license fees for such licenses are provided in Section 5 of the Act. The pertinent part of that section is as follows:

"The fees for such licenses to be as follows: Each 'operator' of automatic vendors, and/or skill machines, and/or trade machines, shall pay to the Tax Collector an Occupational tax of One Hundred Fifty Dollars to the State and Seventy-five Dollars to the county and Seventy-five Dollars to the city or incorporated town, and in addition thereto the following occupational tax on each machine as set forth in this section, and each 'location operator' as defined in Section 3, shall pay an occupational license tax on *each* machine to the said Tax Collector for the State, as follows:

| | |
|---|---|
| Automatic vendors | $ 30.00 |
| Skill machines | 10.00 |
| Trade machines | 10.00 |
| Other machines | 500.00 |

and shall pay a license tax to the said Tax Collector for the county in which said machines are operated on each machine, as follows:

| | |
|---|---|
| Automatic vendors | $ 15.00 |
| Skill machines | 5.00 |
| Trade machines | 5.00 |
| Other machines | 250.00 |

·and shall pay a license tax to the city or incorporated town on each machine, as follows:

| | |
|---|---|
| Automatic vendors | $ 15.00 |
| Skill machines | 5.00 |
| Trade machines | 5.00 |
| Other machines | 250.00" |

So we observe that this section requires of each "operator" of such machines to pay to the Tax Collector an occupational tax of $150.00 to the State and $75.00 to the county and $75.00 to the city or incorporated town, and in addition thereto to pay the occupational tax set forth in this section. ;That occupational tax set forth is on automatic vendors, ·$30.00; skill machines, $10.00; trade machines, $10.00; and on other machines, $500.00; and to pay to the Tax Collector for the county on automatic vendors, $15.00; skill machines, $5.00; trade machines, $5.00; other machines, $250.00; and to pay a city license tax to the city or incorporated town on each machine, automatic vendors, $15.00; skill machines, $5.00; trade machines, $5.00, and other machines, $250.00. And it requires that each "location operator" as defined in Section 3 of the Act shall pay a like occupational license tax on each machine for the State, the county and the municipality.

Section 12 of the Act provides as follows:

"No laws or parts of laws which have for their purpose ·the prohibition of gambling devices shall be construed to apply to licensed coin-controlled machines, as defined and permitted under this Act. · Provided, further, that nothing herein shall be construed to mean that more than one occupational tax may be required from any one operator, and not more than one location tax may be required of each machine, in the same county or city."

The effect of this section is to make operators of coin-operated devices as are described in the Act immune from prosecution for the violation of any laws within the State of Florida the purpose of which is the prohibition of gambling devices. The validity of the Act has been upheld by this Court in Lee, Comptroller, v. City of Miami, 121 Fla. 93, 163 Sou. 486, and also in Hardison v. Coleman, as Sheriff of Dade County, Florida, opinion filed December 11, 1935.

Chapter 17257, *supra,* is a revenue Act designed to raise revenue for certain State purposes and it may be said to be a police regulation inasmuch as it regulates the operation of the coin-operated devices therein described by requiring that such devices may be lawfully operated only for the payment of the license fees required by the Act, and that minors shall not be permitted to play such machines, nor shall they be located within a prescribed distance of any church or school.

In 19 R. C. L. 803, it is said:

"A municipality cannot lawfully forbid what the Legislature has expressly licensed, authorized or required."

See also 43 C. J. 215.

In support of this statement *Ex Parte* Theisen, 30 Fla. 529, 11 Sou. 91, 32 Am. St. Rep. 36, is cited. In that case it was said:

"Our decision in the case at bar rests upon the conclusion that the grant to municipal corporations to regulate and restrain, will not permit the enactment of an ordinance under which arbitrary discrimination may be made in respect to matters which are exclusively under statutory control and regulation. In the absence of an express declaration of intention to that effect, it must not be assumed that the Legislature proposed by the grant of power to municipal corpo-

rations to regulate and restrain retail liquor dealing, to confer upon them the power to contravene and defeat State policy by ordinances inconsistent with the laws of the State on the subject. The personal fitness of an applicant to retail in any place, whether within the limits of a municipal corporation or in the interior of a county, as regulated by State law, and we think that municipal authorities have no right to arbitrarily discriminate between individuals to any extent, based solely on account of personal fitness."

In further support of this statement, the following cases as cited:

"Wilkie v. Chicago, 188 Ill. 444, 58 N. E. 1004, 8 A. S. R. 182; Cushing v. Boston, 128 Mass. 330, 35 Am. Rep. 383; Collins v. Harch, 18 Ohio 523, 51 Am. Dec. 465; Robinson v. Franklin, 1 Humph (Tenn.) 156, 34 Am. Dec. 625, and note; Katzenberger v. Lawo, 90 Tenn. 235, 16 S. W. 611, 25 A. S. R. 681, 13 L. R. A. 185, and note."

13 L. R. A., old series, 185, editor's note, states: "A municipal ordinance which conflicts with a State law on the same subject is void." And cites New York v. Nichols, 4 Hill 209; Thompson v. Mt. Vernon, 11 Ohio St. 688; Adams v. Albany, 29 Ga. 56; Still v. Corning, 15 N. Y. 297; Cincinnati v. Gwynne, 10 Ohio 190; Wood v. Brooklyn, 14 Bark. 425; Markle v. Akron, 14 Ohio 586; Thomas v. Richmond, 79 U. S. 12 Wall. 349, 20 L. Ed. 453.

To hold otherwise in cases of this sort would result in conceding the power to rest in municipalities to frustrate the purpose which the State Legislature has in enacting revenue laws such as that here under consideration. It would be to allow the municipality to say that although the State Legislature had adopted the policy to license and legalize certain occupations, that the State might thereby draw from such occupations certain revenues, it could not

exercise that right within the municipality and that the municipality by its action could cut off that source of revenue to the State from all potential operations contemplated by the general State law within the municipality.

These cases are to be differentiated from cases such as that of City of Apalachicola v. State, 93 Fla. 921, 112 Sou. 618. In that case we were considering grants of power to municipalities in the exercise of their governmental functions. That is to say, we were construing the force and effect of conflicting statutes, each of which prescribed a rule of law by which governmental functions were to be accomplished. The charter of the municipality authorized the issuance of bonds under certain conditions, while the general law authorized the issuance of bonds under other conditions and the holding was that the provisions of the Charter Act, which was a special law applicable to that particular municipality, and applicable to the manner of performing the governmental functions involved, should prevail over the provisions of the general law on the same subject.

The question as to whether or not a municipality under its general or special police power can prohibit within the municipality an Act which has been declared by general legislative enactment to be lawful throughout the State was not involved.

From what we have stated above, it follows that the operation of coin-operated machines such as that described in the proceedings here, may be lawfully accomplished only when all of the license fees required to be paid have been paid or in good faith tendered. The statute, Chapter 17257, *supra*, is mandatory in the requirements of the payment of license tax to the State, the county and the municipality. Of course, it follows that when the amount of the license

tax is tendered in accordance with the provisions of the Act, it is the duty of the designated officials to accept the same, but there is nothing in the record here to show that all of the license fees required to be paid by the petitioner have been paid or in good faith tendered to the proper authorities. Therefore, there is no showing here that the coin-operated machine described in the affidavit and warrant is being lawfully operated by the petitioner. That all the fees required by the statute under the conditions prescribed in the statute have been paid, or in good faith tendered, is a matter of defense to the prosecution. It cannot be maintained that the *municipality* may refuse to issue a license to one to whom it is mandatorily required by State law to issue the same when such one lawfully entitled to receive the same, under the terms of State law, has in good faith tendered the payment of sufficient good and lawful money to the proper city authorities to entitle him to receive the desired license or permit from the municipality and then successfully prosecute the person so entitled to receive such permit or license for unlawfully conducting an activity or business which would have been lawfully conducted, had the municipality performed its duty and issued the license or permit which it was in duty bound, under such conditions, to issue to such person.

For the reasons stated, the judgment should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.