ANDREW J. KAVANAUGH, Director of Public Safety, of Miami, *et al.*, v. SAXON AMUSEMENT COMPANY, *et al.*

176 So. 855.
Division B.
Opinion Filed November 6, 1937.

*J. W. Watson, Jr.,* and *Abe Aronovitz,* for Appellants;
*J. F. Gordon,* for Appellees.

CHAPMAN, J.—The parties will be referred to in this opinion as they appeared in the court below as plaintiffs and defendants. On May 21, 1936, plaintiffs filed their amended bill of complaint in the Circuit Court of Dade County against the police officers of the City of Miami, the prayer of which sought to restrain the defendants from seizing and removing any and all slot machines of the plaintiffs and from committing trespass thereon. It likewise sought an order requiring the officers of the city to deliver to the plaintiffs slot machines formerly seized. The restraining order prayed for was by the court granted and a hearing was had on a motion

to dissolve the restraining order previously entered and to dismiss the bill of complaint. On May 19, 1936, an original bill of complaint was filed in the same court, involving the same parties, and the same subject matter, and a restraining order issued thereon, but the amended bill contained the same allegations as the original bill, with additional allegations and parties. It is not necessary to consider the original bill and restraining order for a decision of this cause.

The lower court on hearing on motion to dismiss the amended bill and to dissolve the restraining order previously entered overruled and denied each thereof and the same is here for a review on said adverse order with five assignments predicated thereon.

The amended bill of complaint charges that the police officers of the city by virtue of an ordinance number 1408 enacted by the City of Miami had seized the slot machines in question and claimed that the "operators" and "location operators" thereof had failed and otherwise omitted to pay the amount of the license therefor as prescribed by ordinance number 1408. It is admitted by the parties that the ordinance under which the slots were seized was the same as Chapter 17257, Acts of 1935, with the exception of a few words pointed out by the Chancellor in the order assigned as error. This Court construed Chapter 17257, Acts of 1935, in the case of State, *ex rel.* Baker, v. McCarthy, 122 Fla. 749, 166 Sou. Rep. 280.

It is contended by defendants that the City of Miami and its police officers had a right to seize the machines because the operators and location operators had not paid the amount required by the ordinance numbered 1408, but on hearing it was admitted that there had been paid to the city all that had been requested or demanded under said ordinance.

The question to be settled by this cause is: What amount should be paid to the City of Miami under ordinance number 1408 for operators and location operators of machines? The ordinance is identical with Chapter 17257, Acts of 1935, and the amount of fees for such licenses was considered in the suit of State, *ex rel.* Baker, v. McCarthy, 122 Fla. 749, text p. 752-753, 166 Sou. Rep. 280, when it was said:

"The fees for such licenses to be as follows: Each 'operator' of automatic vendors, and/or skill machines, and/or trade machines, shall pay to the Tax Collector an Occupational tax of One Hundred Fifty Dollars to the State and Seventy-five Dollars to the county and Seventy-five Dollars to the City or Incorporated Town, and in addition thereto the following occupational tax on each machine as set forth in this section, and each 'location operator' as defined in Section 3, shall pay an occupational license tax on *each* machine to the said Tax Collector for the State, as follows:

Automatic vendors ..............................$ 30.00
Skill machines ....................................  10.00
Trade machines .................................  10.00
Other machines ................................. 500.00

and shall pay a license tax to the said Tax Collector for the county in which said machines are operated on each machine as follows:

Automatic vendors ..............................$ 15.00
Skill machines ....................................  5.00
Trade machines .................................  5.00
Other machines ................................. 250.00

and shall pay a license tax to the city or incorporated town on each machine, as follows:

Automatic vendors ........................$ 15.00
Skill machines .............................     5.00
Trade machines ...........................     5.00
Other machines ..........................  250.00

"So we observe that this section requires of each 'operator' of such machines to pay to the Tax Collector an occupational tax of $150.00 to the State and $75.00 to the county and $75.00 to the city or incorporated town, and in addition thereto to pay the occupational tax set forth in this section. That occupational tax set forth is on automatic vendors, $30.00; skill machines, $10.00; trade machines, $10.00; and on other machines, $500.00; and to pay the Tax Collector for the county on automatic vendors, $15.00; skill machines, $5.00; trade machines, $5.00; other machines, $250.00; and to pay a city license tax to the city or incorporated town on each machine, automatic vendors, $15.00; skill machines, $5.00; trade machines, $5.00; and other machines, $250.00. And it requires that each 'location operator' as defined in Section 3 of the Act shall pay a like occupational license tax on each machine for the State, the county and the municipality."

It cannot be overlooked that the Act was a revenue measure and has been repealed. The Chancellor below heard the witnesses, observed the machines in question, received expert testimony as to the distinction between machines sought to be licensed and on final hearing the order appealed from contained the following language:

"After describing, defining and classifying what appears to be all of the then known types of slot machines being operated in Florida, the Legislature added Classification 4 of Section 2, the purpose of which, evidently, was to prevent, by a prohibitive tax, any new type of slot machines

from coming in competition with those from which revenue was to be derived.

"It would be a strained construction to hold that the Legislature, in seeking to derive revenue from a widely known type of slot machine which by the prevalence of its use gave promise of producing large revenues, would have left such machines unnamed, unmentioned and undescribed, and classed them as 'all other coin-operated machines or slot machines not covered by any of the above devices, classifications or descriptions,' and placed upon them a practically prohibitive license tax of $2,000.00 a year to the State, county and city. It appeared in the argument that there are in the State about 16,000 of these money-paying slot machines. * * *

"Since these slot machines do not come within Classifications 2 or 3 of Section 2 of the ordinance, and since placing these slot machines in Classification 4 of Section 2 would result in defeating the purpose of the law, I am forced to the conclusion that the Legislature intended to place them in Classification 1 of Section 2; and that they are properly licensed both by the State and city, under that classification, and having paid such licenses are, therefore, entitled to operate.

"If it should be contended that even if the Legislature did not intend to prevent by a prohibitive tax the operation of this type of slot machine, that such was the intention of the City Commission. The answer to that is that since the section of the city ordinance under consideration is identical with the State law, any construction placed upon the latter must apply to the city ordinance." * * *

The type or description of the machines as to the classification, etc., under the ordinance was settled by the Chancellor as a question of fact and applied the law as expressed

in the ordinance and Chapter 17257, Acts of 1935. We have repeatedly held that before these conclusions can be reversed or set aside it is necessary to show an abuse of discretion and nowhere in the record has this been made to appear. In the case of Farrington v. Harrison, 95 Fla. 769, text p. 770, 116 Sou. Rep. 497, this Court said:

"We also bear in mind the oft reiterated rule that while the findings of the chancellor on the facts where the evidence is heard by him, and the witnesses are before him, are entitled to more weight in the Appellate Court than where such findings are made in a cause where the testimony was not taken before the chancellor, yet in either case the chancellor's findings should not be disturbed by an Appellate Court unless shown to be clearly erroneous. Sandlin v. Hunter Co., 70 Fla. 514, 70 South. Rep. 553; Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 23.

"On the other hand, where a decree is manifestly against the weight of the evidence or contrary to and unsupported by the legal effect of the evidence, then it becomes the duty of the Appellate Court to reverse such decree. Carr v. Leslie, 73 Fla. 233, 74 South. Rep. 207; Florida National Bank v. Sherouse, 80 Fla. 405, 86 South. Rep. 279; Gill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Lightsey v. Washington Park Properties, 112 South. Rep. 555."

We fail to find error in the record and accordingly the order appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.