Fred Lippman Representative 94th District Hollywood
QUESTIONS:
1. In light of the provisions of part III of ch. 401, F. S., is a municipality authorized to adopt its own ordinance regulating emergency and nonemergency medical transportation services within the corporate limits of the municipality?
2. In light of part III, ch. 401, does the adoption by the county of an ordinance regulating emergency and nonemergency medical transportation services within the county render municipal ordinances ineffective and prohibit a municipality from adopting its own ordinance regulating such services within the corporate limits of the municipality?
3. Does the mere fact that a county has adopted an ordinance pursuant to s. 401.25 render a municipal ordinance `in contravention' of the provisions of part III, ch. 401?
SUMMARY:
Unless and until judicially or legislatively determined otherwise, a municipality is not authorized to adopt its own ordinance regulating emergency and nonemergency medical transportation services within the corporate limits of the municipality when that ordinance, in contravention of the provisions of part III of ch. 401, F. S., requires a certificate of public convenience and necessity from the municipality prior to operation of such medical transportation service within the corporate limits of state-licensed and state-regulated operators. The requisite certificates of public convenience and necessity, and the reasonable standards authorized to be established for their issuance by the counties, do not envision or embrace the regulation of the operation or maintenance of emergency or nonemergency medical transportation services; the operation and maintenance of these services are regulated by the state through the Department of Health and Rehabilitative Services pursuant to the provisions of part III of ch. 401 and rules and regulations promulgated by the department under the authority therein provided.
Part III, ch. 401, F. S. (ss. 401.21-401.47), the `Florida Emergency and Nonemergency Medical Services Act,' establishes the statewide regulatory scheme for emergency and nonemergency medical transportation services. Section 401.25 provides for licensing of such medical transportation services by the Department of Health and Rehabilitative Services, that section setting forth certain requirements for granting of licenses, including compliance with the requirements of the emergency medical services law and appropriate rules and regulations (s. 401.25(3)(b)). Chapter 10D-66, F.A.C., sets forth with greater particularity the minimum requirements and standards applicable to the medical transportation services licensed under s. 401.25.
In order to obtain a state license under this section, an applicant must obtain a `certificate of public convenience and necessity from the county commission in each county in which the applicant will operate.' Section 401.25(3)(d), F. S. (Emphasis supplied.). Rule 10D-66.33(1)(c), F.A.C., requires each ambulance service operator to maintain and publicly display in the ambulance service's main office both the license issued by the Department of Health and Rehabilitative Services and the current certificate of public convenience and necessity issued by the county commission of the county in which the ambulance service operates. The statute makes no mention of any requirement that a licensee obtain the approval of, or any license or permit from, the municipality. Rather, s. 401.25(8) expressly provides that:
 The governing body of each county is authorized to adopt ordinances providing reasonable standards for certificates of public convenience and necessity for emergency or nonemergency medical transportation services. (Emphasis supplied.)
I am of the view that the term `reasonable standards for certificates of public convenience and necessity' has reference to fitness or suitability of applicants for certificates to render such services. It also refers to the public need for the proposed service and its adequacy, as well as to the sufficiency of existing transportation facilities and services, and the ability and financial resources of the applicant to furnish the required facilities and services in regard to obtaining permission to use the streets and highways within the county in rendering medical transportation services. See generally 60 C.J.S. Motor Vehicles s. 90(1) and (2). Viewing part III of ch. 401, F. S., in its entirety, these `reasonable standards' do not envision or embrace the regulation of the operation or maintenance of such services or other regulatory matters and things specified in part III of ch. 401 and in the rules and regulations promulgated by the department thereunder. See, e.g., ss. 401.23(4) and (5) and 401.24-401.27.
Additionally, s. 401.39, F. S., provides that
 [n]othing in this act shall be construed as preventing any county or city, whether acting jointly or independently, from enacting additional regulations not in contravention of the provisions of this act. (Emphasis supplied.)
Since your questions are interrelated, they will be answered jointly. Your inquiry notes that, in 1977, Broward County adopted an ordinance pursuant to s. 401.25(8), F. S. Prior to 1977, several municipalities in Broward County enacted their own ordinances requiring the obtaining of a certificate of public convenience and necessity in order to operate an ambulance withinthe corporate limits of such cities. Thus, you question whether part III, ch. 401, F. S., was intended to authorize only counties to issue certificates of public convenience and necessity for such services, and to provide reasonable standards therefor, thereby precluding municipalities from having ordinances which purport to control medical transportation services in this regard. As hereinabove noted, the licensing and regulation of the operations of medical transportation services are not embraced within the authority to prescribe reasonable standards for the granting or denying of certificates of public convenience and necessity for these services; rather, these services are regulated by the state through an agency of the state pursuant to the provisions of part III of ch. 401 and pursuant to rules and regulations promulgated by the Department of Health and Rehabilitative Services. In light of s. 401.39, it appears that municipalities are not permitted to require that certificates of public convenience and necessity or other permits, or the approval of the municipality, be obtained prior to a licensee's operating within the corporate limits. This conclusion is founded in part on language in s. 401.39 that states that municipalities have the power to enact `additional
regulations not in contravention of the provisions of [part III, ch. 401].' (Emphasis supplied.) `Additional' is defined inWebster's Third New International Dictionary as something `added' or `further.' Thus, in the context of the problem which you present, `additional regulations' appear to mean further regulations above or beyond either the minimum standards specified in s. 401.35 or the requirements of the state plan provided for in s. 401.24. This section generally makes the Department of Health and Rehabilitative Services responsible for the improvement and regulation of emergency and nonemergency medical transportation services and requires it to develop and periodically revise a comprehensive state plan for such medical transportation services, including requirements for the operation of such services; s.401.35 imposes on the department the duty of promulgating rules necessary to carry out the purposes of part III of ch. 401, including the specified minimum standards. See also ss.401.25(3)(b), 401.26(2) and (3), 401.27(2), 401.30, 401.31(2),401.35, 401.42, 401.46(1), and 401.47(2), and ch. 10D-66, F.A.C.
Whether a municipal ordinance contravenes, transgresses, or conflicts with state law or the county ordinance is a question of fact. Your letter states that the ordinances in question require ambulance services to obtain a certificate of public convenience and necessity from the city prior to operation within the corporate limits of that city. The requirements that an additional city certificate be obtained appears to be in contravention of part III, ch. 401, F. S., since that additional city requirement appears to `transgress,' `violate,' `infringe,' or `disregard' the comprehensive uniform state regulatory scheme set forth in ss. 401.21-401.47, and ch. 10D-66, F.A.C. See `contravene' inWebster's Third New International Dictionary. For example, in the event that a municipal certification of public convenience and necessity were denied an applicant, a duly issued state license would be useless within that municipality. Conversely, the granting of any such municipal certificate would not qualify the municipal licensee for lawful operation under, nor would he meet the requirements of, part III of ch. 401. In State ex rel. Banker v. McCarthy, 166 So. 280, at 282 (Fla. 1936), it was held that `[a] municipality cannot lawfully forbid what the legislature has expressly licensed, authorized or required.' The McCarthy court, in a context similar to that presented by the instant inquiry, held:
 In the absence of an express declaration of intention to that effect, it must not be assumed that the legislature prooposed, by the grant of power to municipal corporations to regulate and restrain . . . to confer upon them the power to contravene and defeat state policy by ordinances inconsistent with the laws of the state on the subject. The personal fitness of an applicant . . . whether within the limits of a municipal corporation or in the interior of a county, is regulated by state law . . . . (Emphasis supplied.)
The Supreme Court of Florida has also held that `[i]n order for amunicipal ordinance to prohibit that which is allowed by thegeneral laws of the state there must be an express legislative grant by the state to municipality authorizing such prohibition. . . .' Rinzler v. Carson, 262 So.2d 661, at 668 (Fla. 1972). (Emphasis supplied.) In my opinion, part III, ch. 401, does not contain such an express grant.
Moreover, state courts have held in the past that, when doubt exists as to the extent of a power attempted to be exercised which may affect the operation of a state statute, the doubt is to be resolved against the municipal ordinance and in favor of the statute. City of Wilton Manors v. Starling, 121 So.2d 172 (2 D.C.A. Fla., 1960), citing City of Coral Gables v. Seiferth,87 So.2d 806 (Fla. 1956).
The city certificate requirement adds another tier of regulation for ambulance services, regulation which is apparently preempted to the state and county. See ss. 401.21-401.47, F. S., and ch. 10D-66, F.A.C. See also ss. 166.021(3)(c) and 166.221, F. S. Conversely, the requirement of a city occupational license tax levied pursuant to s. 205.042, F. S., would in no way impact on or contravene the grant of a state license under s. 401.25(3)(a)-(d) since the city license tax would not purport to regulate ambulance services. See ss. 205.022(1) and 205.042, F. S.
Prepared by: Anne Curtis Terry, Assistant Attorney General