535 So.2d 302 (1988)
CITY OF ORMOND BEACH, City of Holly Hill, City of Orange City, and City of Edgewater, All Florida Municipal Corporations, Appellants,
v.
COUNTY OF VOLUSIA, a Political Sub-Division of the State of Florida, Appellee.
No. 87-2144.
District Court of Appeal of Florida, Fifth District.
November 23, 1988.
Rehearing Denied January 6, 1989.
Fred S. Disselkoen, Jr., Ormond Beach, for appellant City of Ormond Beach.
Edward F. Simpson, Jr., Ormond Beach, for appellant City of Holly Hill.
William F. Duane and Richard E. Davis, of Holland and Knight, Orlando, and Jose B. Alvarez, DeLand, for appellants City of Orange City and City of Edgewater.
C. Allen Watts, Cobb and Cole, Daytona Beach, and Daniel D. Eckert, Co. Atty., DeLand, for appellee County of Volusia.
*303 Robert L. Nabors and Arthur R. Wiedinger, Jr., of Nabors, Giblin, Steffens and Nickerson, P.A., Tallahassee, for Amicus Curiae Florida Ass'n of Counties, Inc.
SHARP, Chief Judge.
The cities of Ormond Beach, Holly Hill, Orange City and Edgewater (some of the incorporated municipalities located in Volusia County, Florida) appeal a final summary judgment in a suit for declaratory relief brought against them by Volusia County. The county sought to have the cities' respective ordinances "opting out" of the county's impact fee to pay for county roads declared invalid. The trial judge held that the cities' ordinances were null and void because they conflicted with the county's powers and duties to maintain and furnish the county road system as defined in Chapter 336 and Chapter 380. We affirm, although on a different ground than that relied upon by the trial judge.
For purposes of these proceedings, the cities stipulated that Volusia County's road impact fee ordinance is legally valid and within the county's power and authority to adopt. The county ordinance (no. 86-6) recites that its purpose is to regulate the use and development of land in the county, and to implement the county's comprehensive plan, by imposing an impact fee on new construction and development throughout the county, in order to pay for the expansion of the county's roads attributable to new growth and development. The fees must be paid prior to obtaining a building permit, and are based on a schedule of projected road usage by new development. Fees are collected in designated zones in the county and must be expended in the zone where collected; and, if not, then the fees must be returned to the owners, with interest.[1]
The four cities involved in this proceeding each passed nearly identical ordinances exempting all property within its municipal boundary, from the provisions of the Volusia County ordinance.[2] There are other municipalities located in Volusia County other than the four cities involved in this suit, but only these four opt-out ordinances are involved in this proceeding. For example, Edgewater's ordinance No. 86-0-35 provides:

Section 1: All areas within the city limits of the City of Edgewater, Florida, shall be exempted from the application of the terms and provisions of Volusia County Ordinance No. 86-6, the Volusia County Road Impact Fee Ordinance.

Section 2: No road impact fees shall be due or collected because of any land use activities or developments within the corporate limits of the City of Edgewater, Florida, pursuant to Volusia County Ordinance No. 86-6.
The purpose and findings supporting each of the cities' ordinances is a general recitation that Volusia County has imposed an impact fee on development within the city as well as in the unincorporated areas of the county. Then follows a recitation that pursuant to Article VIII, section 1(g), Florida Constitution, in charter counties such as Volusia, the charter must provide whether county or city ordinances prevail in case of a conflict. Section 1305 of Volusia's charter provides that municipal ordinances prevail if there is a conflict, with one exception not applicable to this case.[3] The City of Ormond Beach's ordinance further recites as a basis for its opt-out ordinance that the city commission:

*304 [D]eems it to be in the best interest of the health, safety and welfare of the City of Ormond Beach to enact an ordinance exempting from the provisions of Volusia County Ordinance 86-6 all areas within the City limits ...
When the validity of a municipal ordinance is questioned in a lawsuit, the Florida Supreme Court instructs the courts to ask a "two-tiered question:"
Was the action undertaken for a municipal purpose? If so, was that action expressly prohibited by the constitution, general or special law, or county charter? (citations omitted) (emphasis in original)
City of Boca Raton v. Gidman, 440 So.2d 1277, 1280 (Fla. 1983). Only if the first requirement is satisfied, is it necessary to consider whether the municipality's ordinance is expressly prohibited or preempted by other superior law. See, e.g., The Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984); Rinzler v. Carson, 262 So.2d 661 (Fla. 1972); City of Miami Beach v. Amoco Oil Co., 510 So.2d 609 (Fla. 3d DCA 1987); Edwards v. State, 422 So.2d 84 (Fla. 2d DCA 1982).
Under our 1968 Florida Constitution, Article VIII, section 2(b), and the Home Rule legislation[4] implementing it, cities in Florida are given broad powers to act for "municipal purposes."[5] "Municipal purpose" is not a restrictive term. It is defined in the statute as "any activity or power which may be exercised by the state or its political subdivisions." § 166.021(2), Fla. Stat. (1987). However, it must be an activity related to the conduct of municipal government, exercise of a municipal function, or provision of a municipal service.
Most cases dealing with whether a city's ordinances or other municipal activities are for a "municipal purpose" concern some positive action undertaken by the city, considered to be needed for the health, morals, safety, protection or welfare of the city. See, e.g., City of Boca Raton v. Gidman; (operation of a day-care facility); State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978) (issuing double advance refund bonds); City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974) (rent control ordinance); City of Winter Park v. Montesi, 448 So.2d 1242 (Fla. 5th DCA), rev. den., 456 So.2d 1182 (Fla. 1984) (sale of sinkhole photographs); Hollywood, Inc. v. Broward County, 431 So.2d 606 (Fla. 4th DCA), rev. den., 440 So.2d 352 (Fla. 1983) (requirement of developers to provide parks and open spaces); City of Venice v. Valente, 429 So.2d 1241 (Fla. 2d DCA 1983) (allowing city to recover attorney's fees and costs in a code enforcement proceeding to abate a nuisance). If an ordinance has no reasonable relationship to the morals, health, welfare and safety of the people of a municipality, it is beyond the authorized exercise of the police power of the municipality. 56 Am.Jur.2d Municipal Corporations, § 438 at p. 487; 2 McQuillin, Municipal Corporations, § 9.04.
In this case, the cities' ordinances have no apparent police power or municipal governmental function. Outside of Ormond Beach's preamble to its ordinance, there is no attempt to point to any problem the ordinances are intended to cure, and no reason to conclude they will achieve any good for the community. They simply recite their sole purpose or intent is to opt the respective city out of the county's ordinance, relying upon the primacy of city ordinances in the case of "conflict."
However, there is no real conflict in this case. The cities in essence are attempting to veto an otherwise legitimate effort on the part of the county to raise funds to pay for the county road system, which traverses the municipalities as well as the unincorporated areas.[6] Preventing or hindering the county from its task of maintaining, building and planning the arterial or collective *305 streets throughout the county does not appear to be in any city's best interest or welfare.
Nor do the opt-out ordinances appear to fall within an area of legitimate municipal concern. See State ex rel. Baker v. McCarthy, 122 Fla. 749, 166 So. 280 (1936); Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984); 5 McQuillan, Municipal Corporations, § 15.18; 12 Fla.Jur.2d, Municipal Corporations, § 194. The attorneys for the cities candidly admit their client cities wished to opt out in order to force the county to consult them in planning county roads and expending funds within the county. This goal, however, is absolutely contrary to the scheme of general law in Florida which gives the planning, building and maintaining function for county roads exclusively to the counties  not to the cities.[7]
The cities also argue that Home Builders and Contractors Assn. of Palm Beach County, upheld the validity of similar opt-out ordinances passed by cities in Palm Beach County. However, a close reading of that case reveals that the validity of such ordinances was not raised, nor were they under attack. Further, a later case from the same court, referring to Home Builders, stated that the Palm Beach County ordinance which imposed impact fees and which was challenged in that case (in contrast to this case), itself allowed for the cities to opt out. Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 496 So.2d 930, 939 (Fla. 4th DCA 1986), approved, 515 So.2d 217 (Fla. 1987). In any event, the only challenge to the opt-out ordinances made in Home Builders was whether their impact on the county's ordinance violated the equal protection provisions of the federal and state constitutions. Accordingly, we do not find that Home Builders is in conflict with the result reached here.
The trial court's judgment is affirmed for the reasons herein stated.
AFFIRMED.
ORFINGER, J., concurs.
COBB, J., concurs specially with opinion.
COBB, Judge, concurring specially.
The bases for the four municipal "opt-out" ordinances herein at issue, as recited by the various enacting clauses, do not set forth any valid municipal purpose. Insofar as they purport to attack the validity of the county impact ordinance, they are irrelevant because the validity vel non of the county ordinances was stipulated at trial.
There is only one arguable basis to support the "opt-out" ordinances: encouragement of growth by curtailment of building costs within the city. But that basis was neither recited in the ordinances nor advanced by argument of municipal counsel. The basis that was advanced by such counsel  i.e., municipal control of county road expenditures  is neither a valid nor a recited municipal purpose.
If the "opt-out" ordinances had been enacted as flat prohibitions against all impact fees (whether enacted by county or municipal ordinance) for the purpose of stimulating residential and commercial development within the municipality concerned, a much more difficult legal issue would have been presented to the trial court and to this court.
NOTES
[1] Because of the cities' position that the county's ordinance is valid, we do not reach any of the possible challenges, to such ordinances as made in Contractors and Builders Assn. of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976); Home Builders & Contractors Assn. of Palm Beach County, Inc. v. Board of County Commissioners of Palm Beach County, 446 So.2d 140 (Fla. 4th DCA), rev. den., 451 So.2d 848 (Fla. 1984); Hollywood, Inc. v. Broward County, 431 So.2d 606 (Fla. 4th DCA), rev. den., 440 So.2d 352 (Fla. 1983).
[2] City of Edgewater Ordinance No. 86-0-35; Holly Hill Ordinance No. 2135; Orange City Ordinance No. 87-2-2; and Ormond Beach Ordinance No. 86-35.
[3] The charter provides that the county's ordinances prevail if it sets "minimal standards protecting the environment by prohibiting or regulating air or water pollution or the destruction of the resources of the county belonging to the general public.
[4] Chapter 166, Fla. Stat. (1987).
[5] § 166.021(1), Fla. Stat. (1987); City of Miami v. Kayfetz, 92 So.2d 798 (Fla. 1957); City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769 (Fla. 1914).
[6] §§ 125.01(1)(m) and (w); 163.3161(1), Fla. Stat. (1987).
[7] Chapters 334, 335, 336; § 380.06(15), Fla. Stat. (1987).