50 So.2d 532 (1951)
STATE et al.
v.
CITY OF JACKSONVILLE.
Supreme Court of Florida, en Banc.
January 5, 1951.
Rehearing Denied February 24, 1951.
*533 Herman Ulmer, William A. Carter, and Stockton, Ulmer & Murchison, and William A. Hallowes, III, all of Jacksonville, for appellants.
William M. Madison and Giles J. Patterson, Jacksonville, for appellee.
Fred H. Kent, Jacksonville, and Henry L. Gray, Gainesville, amici curiae.
SEBRING, Justice.
This appeal involves the right of the City of Jacksonville to issue revenue certificates to finance the installation in its *534 municipally owned radio station of equipment for broadcasting television programs.
On March 21, 1950 the City of Jacksonville filed its petition in the Circuit Court of Duval County for the validation of what it described as "Radio Station Revenue Certificate in the aggregate principal amount of $400,000 to aid in Financing the Cost of the Enlargement, Extension and Improvement of the Municipal Radio Broadcasting Station." The State of Florida and certain intervenors answered the petition, alleging that the equipment and facilities proposed to be acquired constituted the component parts of a "television" station, as distinguished from a "radio" station and that the City had no legal authority to construct and operate the proposed facilities or to issue revenue certificates to finance the proposed project.
Evidence was presented on the issues and at final hearing the trial judge entered his decree in which he found and decreed that the City of Jacksonville has owned, maintained and operated a municipal radio broadcasting station since the fall of 1925, has improved its equipment and facilities from time to time, and now finds it necessary and desirable to install television equipment and facilities therein; that the existing facilities of the station are inadequate to meet the demands, requirements and progress of modern developments in the fields of audible and visual radio transmission and that the facilities proposed are essential in order to provide the operating conditions and facilities necessary to guarantee continued service by the station, to obtain the greatest public benefit therefrom, and to protect the investment of the City and its citizens; that the construction, installation and use of the equipment and facilities, which will permit the broadcast of both sound and vision by radio, commonly known as television, will be an improvement, extension and enlargement of the present radio station and not the construction of an entirely new and different station for television broadcasting; that the present radio station has contributed, and with the addition of television equipment will continue to contribute, to the recreation, entertainment, education, happiness, contentment and general welfare of the citizens of the City; that the applicable statutes and ordinances authorize the City to make the contemplated improvements, extensions and enlargements and to issue revenue certificates to finance the construction thereof; that the certificates to be issued are to be paid from net revenues derived from the operation of the radio station, and will not directly, indirectly, or contingently obligate the City to levy or pledge any form of taxation for their payment or make any appropriation out of other City funds therefor; that the City will have no power to levy or pledge any form of taxation for the payment of the principal of or the interest on said certificates; and that the revenues from the operation of the broadcasting station will be sufficient for the purpose of financing the project.
An appeal has been taken from this ruling, the defendants raising as primary questions for determination (1) whether the operation of the municipally-owned broadcasting station by the City of Jacksonville constitutes a municipal purpose; (2) whether the statutory grant of power authorizing the City to acquire, construct, own and operate radio broadcasting stations and all improvements as the City may deem necessary or desirable for use in connection therewith is broad enough to include and embrace the installation and use of television equipment in the City's radio broadcasting station; and (3) whether statutory authority exists for financing the installation of television facilities by certificates of indebtedness which are to be issued without an approving vote of the freeholders.
That the legislature may validly confer proprietary functions and powers upon municipal corporations is not open to question. What shall constitute a municipal function is for the legislature to determine and its decision in the matter will not be subject to interference by the courts unless a clear abuse of discretion is shown. See Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648; State v. Florida State Improvement Commission, Fla., 47 So.2d 627. *535 The City of Jacksonville derives its authority to operate and maintain a municipally-owned radio broadcasting station from chapter 10711, Laws of Florida 1925, as amended by chapter 11565, Laws of Florida, Ex.Sess. 1925, which reads as follows:
"The City of Jacksonville shall have the power, and it is hereby authorized to acquire, construct, own and operate * * * radio broadcasting stations * * * and all such buildings and improvements as said City may deem necessary or desirable for use in connection therewith * * * and said City may charge reasonable admission to or rentals or fees for the use or enjoyment of any of the aforesaid improvements, facilities or things, and may prescribe reasonable rules and regulations for the use and operation thereof."
"That * * * radio broadcasting stations * * * set out in Section 1 of Chapter 10711 of the Laws of Florida, Acts of 1925, each and every, be and the same are hereby declared to be for municipal purposes and, as such, the City of Jacksonville is hereby empowered and authorized to acquire, construct, own and operate the same."
In the light of the modern concept as to what may constitute a municipal purpose we are unable to say that the determination by the legislature that the City of Jacksonville should be empowered and authorized to acquire, construct, own and operate a radio broadcasting station and to make improvements thereto, constituted a "clear abuse of discretion." Though there was a time when a municipal purpose was restricted to police protection or such enterprises as were strictly governmental that concept has been very much expanded and a municipal purpose may now comprehend all activities essential to the health, morals, protection and welfare of the municipality. See Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648. We hold that the maintenance and operation of the radio broadcasting station by the City, and the making of improvements thereto, constitute a valid municipal purpose.
The second question presented by the defendants relates to the right of the City of Jacksonville to install television equipment in its present radio broadcasting station. The defendants maintain that no such right exists for the reason that the statutes upon which the City relies for the exercise of the right make no mention of television (the word "television" being commercially unknown at the time of the enactment of the statutes) and that the power of the City to own and operate radio broadcasting stations and to make enlargements, extensions or improvements thereto does not carry with it the implied power to make the installations contemplated.
Many pages of testimony were taken on this issue in the court below; particularly as to whether the installation of television equipment in the City broadcasting station would amount to the construction of a new and separate station or would merely be an enlargement, extension and improvement of existing facilities. The evidence on the issue was in hopeless conflict. Testimony offered by the defendants' witnesses was to the effect that "in the terminology of radio and television" the construction of a television station would constitute something more than a mere extension, enlargement or improvement of a radio station and would be "the creation of a new business entirely." Testimony given by plaintiff's witnesses (at least one of whom was conceded by defendants' counsel to be an expert in the field of radio communications) was that a new station would not be created by the introduction of the facilities contemplated, because television was only "a new and improved phase of broadcasting by the same station," that radio and television were "two distinct phases of a single function."
Upon this issue the trial judge ruled in favor of the plaintiff; his finding being that "The construction, installation, and use of equipment and facilities, such as are set forth in the Petition herein which permits Radio Station WJAX to broadcast both sound and vision by radio, commonly known as television, is an improvement, *536 extension and enlargement to said Municipal Radio Broadcasting Station."
Pages of scientific data and argument have been inserted in the briefs filed by the defendants on this appeal for the purpose of demonstrating the error of this ruling; but inasmuch as there is substantial, competent evidence in the record to sustain the findings of the trial judge the conclusions reached by him on the issue will not be disturbed.
In the present case the grant of power to the City is broad, comprehensive and prospective in nature. Under the statute the City not only is empowered to operate and maintain radio broadcasting stations but also to acquire such buildings, enlargements, extensions or improvements as the City may deem necessary or desirable for use in connection therewith. It having been established by the evidence that the use of television equipment will amount, in effect, to the employment of a "new and improved phase of broadcasting by the same station," radio and television being but "two distinct phases of a single function," we are of the view that the facilities may be acquired by the City under the power reposed in it, even though at the time of the passage of the statute the use of "television" was unknown.
While the general rule is that the words of a statute should ordinarily be taken in the sense in which they were understood at the time the statute was enacted, the rule is subject to the well-accepted qualification that where the statute to be construed is couched in broad, general and comprehensive terms and is prospective in nature, it may be held to apply to new situations, cases, conditions, things, subjects, methods, persons or entities coming into existence since the enactment of the statute; provided they are in the same general class as those treated in the statute, can be reasonably said to come within the general purview, scope, purpose and policy of the statute, and there is nothing in the statute indicating an intention that they should not be brought within its terms. See 50 Am.Jur. p. 224, Statutes Sec. 237; compare Taylor v. Roberts, 84 Fla. 654, 94 So. 874; Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 720; State v. City of Miami, 101 Fla. 292, 134 So. 608; Philadelphia Retail Liquor Dealers Association v. Pennsylvania Liquor Control Board, 360 Pa. 269, 62 A.2d 53, 4 A.L.R.2d 1212; In re Fox Film Corporation, 295 Pa. 461, 145 A. 514, 64 A.L.R. 499; Duke v. Central New Jersey Telephone Co., 53 N.J.L. 341, 21 A. 460, 11 L.R.A. 664.
The final question involves the right of the City to finance the construction and installation of the television equipment by revenue certificates issued without an approving vote of the freeholders.
As has been noticed chapter 10711, Laws of 1925, empowers the City to acquire, construct, own and operate radio broadcasting stations and all such buildings and improvements as the City may deem necessary or desirable for use in connection therewith, and chapter 11565, Laws 1925, Ex. Sess., declares such acquisitions and improvements to be for a lawful municipal purpose. In 1941 the legislature enacted chapter 21318, Sp.Laws of Florida 1941, which provides, in part, as follows:
"Section 1. The City of Jacksonville * * * is hereby authorized to issue and sell at not less than par value from time to time, certificates of indebtedness and revenue certificates of said City in such denominations and bearing such rates of interest not exceeding six per centum (6%) per annum and becoming due at such times and upon such conditions as may by ordinance be determined. Such certificates of indebtedness and revenue certificates shall be issued for such municipal purposes as may be provided by ordinance. Said ordinance shall state the purpose for which the proceeds of each of such issues of certificates of indebtedness or revenue certificates are to be used, and shall provide that only the revenues of the particular utility, department and facility of said City to be improved shall be pledged for the payment of said certificates of indebtedness or revenue certificates. Provided, however, that no certificates of indebtedness or revenue certificates shall be issued and sold, except as hereinafter provided in Sections 2 and 3 hereof, until *537 such times as the issuance of said certificates of indebtedness or revenue certificates then proposed to be issued shall be first approved by a majority of the votes cast in a general or special election. * * *
"Section 2. That said City is hereby authorized to issue and sell certificates of indebtedness or revenue certificates as hereinabove provided in a total sum which shall not exceed Two Hundred Thousand ($200,000.00) Dollars in any one calendar year for all purposes, which shall include the calendar year 1941 and thereafter. Certificates of indebtedness and revenue certificates to be issued under this section may be issued without submitting the same to a referendum as provided in Section 1 hereof, but shall comply therewith in all other respects.
"Section 3. Nothing herein contained shall be construed to include certificates issued for property owners' portion of street or sidewalk paving."
Subsequently, in 1945 and 1947, certain amendments to chapter 21318 were attempted by the legislature, See Ch. 23354, Sp.Acts of 1945; ch. 24608, Sp.Acts of 1947, and in 1949 the following amendment was enacted:
"Section 1. That Section 3 of Chapter 21318, Laws of Florida, Acts of 1941, entitled `An Act Authorizing the City of Jacksonville to Issue Certificates of Indebtedness or Revenue Certificates', as amended by Chapter 24608, Laws of Florida, Acts of 1947, be and the same is hereby amended so as to read as follows:
"`Section 3. Nothing herein contained shall be construed to include certificates issued for the property owners' portion of street or sidewalk paving. Certificates of indebtedness or revenue certificates may be issued for enlargements, extensions or improvements to the municipal radio broadcasting station * * * without submitting the same to a referendum as provided in Section 1 of said Chapter 21318, Laws of Florida, Acts of 1941; provided, however, that the aggregate amount of certificates of indebtedness or revenue certificates so issued or outstanding for such enlargements, extensions or improvements to said municipal radio broadcasting station shall not exceed the total sum of $500,000.00. * * *.'" See Ch. 25915, Sp.Laws of Florida, Acts of 1949.
The defendants make the contention that the 1945 and 1947 amendments to the 1941 act cannot be given effect because they were not properly enacted. They also make the contention that the 1949 act should not be recognized as valid because as an amendatory act it purports to amend only one specified section of an existing act and yet its subject matter is not germane to the particular section of the act specified.
In the determination of these contentions we do not think it necessary to decide the question whether the 1945 and 1947 amendments were validly enacted by the legislature. For if these amendments were wholly invalid then all reference to them in the 1949 amendment may be treated as surplusage; and if we so regard them then the second contention made by the defendants to the effect that the 1949 amendment seeks to amend only a specific section of an act by the insertion of subject matter not germane to the particular section, may be answered by the decision of this court in Saunders v. Provisional Municipality of Pensacola, 24 Fla. 226, 4 So. 801, 806, wherein it is said "* * * The incorporation into an amendatory act of provisions as to matters properly connected with the subject affected by the act amended, but outside of the matters to which the expressly amendatory sections relate, is not prohibited by the constitution."
When the 1941 statute authorizing the City of Jacksonville to issue revenue certificates for municipal purposes is viewed in its true aspect, it is apparent that the act constitutes nothing more than a legislative affirmation or recognition of the general power already possessed by the City to issue certificates payable solely from revenues in connection with the financing of its revenue-producing utilities, See State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300, coupled with a limitation imposed upon the City that all proposals *538 to issue certificates (except paving certificates) shall be submitted to the qualified electors for approval, where the amounts proposed exceed $200,000 annually. The 1949 amendment to the 1941 act did nothing more than carry forward the general affirmation or recognition of the general power of the City to issue revenue certificates for proper municipal purposes but narrowed the limitation of the 1941 act with respect to the necessity for an approving vote of the electors by providing that revenue certificates to be used for financing enlargements, extensions and improvements to the municipal radio broadcasting station need not require an approving vote of the electors, where the amount to be issued will not exceed $500,000. It is perfectly apparent, therefore, that while the subject matter of the 1949 amendment may not have been wholly and entirely germane to the specific section of the 1941 act which it sought to amend  a question which we need not decide  it was germane to the general subject matter of the 1941 act viewed in its entirety, and this is sufficient. Saunders v. Provision Municipality of Pensacola, supra.
In pursuance of the 1941 act as amended, the City of Jacksonville has adopted an ordinance providing for the issuance of certificates of indebtedness for the enlargement, extension and improvement to the radio broadcasting station  for a purpose declared to be municipal by the 1925 act as amended. The ordinance states the specific nature of the enlargements, extensions and improvements for which the funds are to be expended. The aggregate amount of certificates is well within the amount which may be issued without an approving vote of the electors. The ordinance makes it clear that the certificates are not to be general obligations of the City, that the general taxing power of the City will not be involved, and that the certificates are to be retired only from the proceeds realized from the operation of the radio broadcasting station as enlarged, extended and improved with television facilities.
The decree appealed from finds that the proceeds from the radio broadcasting station as enlarged will be sufficient to meet the financial obligation to be assumed by the City; that the facilities proposed will constitute an improvement, enlargement and extension of the present facilities; and that such enlargements not only are required to protect the present investment of the City but also will contribute to the recreation, entertainment, education, happiness, contentment and general welfare of the citizens of the City. There is substantial evidence to support these findings.
We conclude, therefore, that the operation of the radio broadcasting station by the City of Jacksonville is a municipal function; that the statutes authorizing the operation of the station as a municipal function are broad and comprehensive enough to authorize the improvements, enlargements, and extensions, proposed; and that the certificates to be issued will not constitute bonds within the purview of section 6, Article IX of the Constitution, F.S.A.
All other matters argued by the defendants have been duly considered and are found to be without merit. The decree appealed from should therefore be affirmed.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.
THOMAS, J., agrees to conclusion with opinion
TERRELL and ROBERTS, JJ., dissenting.
THOMAS, Justice.
I agree to the conclusion because it is my opinion that, mechanically, the installation of television is an extension and improvement of the radio station established twenty-five years ago the existence and maintenance of which is not directly involved in this litigation. My evident reluctance springs from my disfavor of the *539 operation in a competitive field of any enterprise that is not inherently associated with the general welfare of the people, the result being that similar private business must pay taxes while the corresponding municipal business need not and, to go a step further, the private business may be taxed to pay the losses of the municipal competitor.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.