QUESTIONS:
1. What information is required to be set forth on bank trust receipts which are received by a board of county commissioners in lieu of actual physical possession of securities purchased with surplus county funds pursuant to a `repurchase agreement' or otherwise?
2. When a district school board purchases securities pursuant to an investment program, is physical custody of such securities required, or is an alternative procedure permitted by law?
3. What effect do the answers to the questions above have upon such investments in light of a new federal system whereby U.S. treasury bills are issued only by means of a book entry of record at the federal reserve bank and at another bank acquiring ownership thereof from which the governmental body in question purchased the treasury bills?
SUMMARY:
Neither the school boards nor the several boards of county commissioners are required to list or otherwise record the serial numbers of the securities in which they invest, even though they never receive actual physical custody of the various securities. Hence, there is no obstacle to investment in treasury bills issued by a new book-entry method. The boards of county commissioners, however, are required to list the various types of securities held and the total number of each of the various types.
AS TO QUESTION 1:
Your first question appears to arise out of the following fact situation. Pursuant to s. 125.31(1), F. S., several boards of county commissioners have begun short-term investment programs for investment of surplus county funds. Essentially, under these programs, the board will purchase securities for a short time, generally for less than a month. Each program contains a repurchase arrangement whereby at the end of the investment period the original seller agrees to buy back the securities. Under these plans, the governmental body never actually receives physical
custody of the securities; rather, the securities are retained by the original seller or by a third party financial institution during the entire period the board owns the securities. It is this lack of physical custody of the securities by the boards that prompts your inquiry.
Section 125.31(1), as noted, authorizes the board to invest surplus funds in designated securities. Section 125.31(2) sets forth two permissible ways the board may maintain custody over securities it has purchased. At the outset, it should be noted that, in my opinion, these two methods of custody set forth in the statute constitute the sole methods of custody; that conclusion is based on a well-established rule of statutory construction which holds that if a statute specifically sets forth certain ways by which something is to be done, alternative methods, not specifically authorized, of doing the thing are not permitted. See
Alsop v. Pierce, 19 So.2d 799 (Fla. 1944).
Section 125.31(2)(a) addresses the manner in which the board may maintain physical custody and safekeeping of its securities. From your letter, it is clear that, under the repurchase agreements in question, the boards never obtain actual physical custody of the securities. In such a situation, the statute specifies an alternative procedure. Section 125.31(2)(b) authorizes the board of county commissioners to receive bank trust receipts in return for its investment in securities and authorizes the designated bank depositories to hold the actual securities on which the trust receipts are issued. It requires that any such trust receipts obtained or received `enumerate the various securities held together with the specific number of each security held.' You state that you find this last quoted requirement somewhat ambiguous and are, therefore, unclear as to the meaning of the phrase `specific number of each security held.' Specifically, the problem is whether the phrase refers to the class of various securities held and the specific number of a particular security within a given class held by the county or whether the phrase, read with the requirement that the various securities be enumerated, means that the receipt must list the serial number of each security.
To my knowledge, no court has yet interpreted the provision in question. Furthermore, I have found no extraneous evidence of legislative intent which would indicate the meaning of the phrase. My opinion must, therefore, rest solely upon the wording of the statute itself construed according to the context and the common usage of the words employed by the Legislature. Since the Legislature is presumed to know the meanings of words and grammar, a rule of statutory construction dictates that we construe words in common use according to their plan and ordinary signification, unless it appears they were used in a technical sense. State v. Tunnicliffe, 124 So. 279 (Fla. 1929); Gaulden v. Kirk,47 So.2d 567 (Fla. 1950); and cf. State v. Jacksonville, 50 So.2d 532 (Fla. 1951). Based upon an analysis of the wording of the statute employing this rule of construction, I conclude that the various types of securities held must be listed separately along with the exact number (quantity) of each type; serial numbers, however, need not be recorded.
The word `enumerate' may be defined variously as `mention specifically . . . expressly name . . . as in speaking of `enumerated' governmental powers, items of property, or articles in a tariff schedule,' Black's Law Dictionary 629 (Revised 4th Ed. 1968); or as `to designate or specifically mention . . . to specify singly,' 30 C.J.S. Enumerate; and see 14A Words and Phrases Enumerate, also defining the term as `specifically mention.' This is the common, understood meaning of the word and it is apparently not used in any technical sense; according to C.J.S., supra, the word `has no peculiar or appropriate meaning in law, and it is to be construed according to the context and approved use of the language.' The statutory phrase requires that receipts `enumerate the various securities held.' (Emphasis supplied.) Applying the meaning of `enumerate,' I find that the receipts must `specifically mention' the various securities held in the sense of listing by class or type the kinds of securities held by the board. The statute requires enumeration `together with the specific number of each security held.' This is the troubling phrase. `Specific number' is an ambiguous term to which can be attributed more than one meaning. The word `number' is generally defined as `a collection of units . . . proportion and ratio.' 67 C.J.S. Number; see also 28A Words and Phrases Number. Webster's Third New International Dictionary defines `number' as `the sum of the units involved.' Under this accepted definition `specific number of each security held' would mean the precise sum or total of each of the various types of securities held by the board, or the `ratio' of each type of security to the total amount. The word `number,' however, is also defined by Webster's, supra, to mean `digit or group of digits used as a means of identification.' If this were the meaning of the word intended by the Legislature, however, the term `serial number' would probably have been used rather than `number' alone. It should be noted that Webster's,supra, contains a separate entry listed under `serial number' which is defined as a `number indicating place in a series and used as a means of identification.' The fact of a separate listing is significant, because it indicates that the term `number' used separately does not generally take on such a specialized meaning; rather, that meaning is reserved for the compound phrase `serial numbers.' Webster's, supra, also indicates under its entry `number' that, when the word is followed by the preposition `of,' it usually refers to quantity, while the preposition `on' is commonly used when the term means `identification.' Thus, the phrase `specific number of each security held,' as used in the statute, would commonly be understood to mean quantity or sum of each security, while `specific number on each security' would commonly be understood to mean some sort of identification number. Hence, I conclude that the statute requires that bank trust receipts list the various types of securities held and the exact number (quantity) of each of the various types. The serial or other identification numbers on each security need not be listed.
AS TO QUESTION 2:
Your second question is apparently prompted by the fact that several district school boards use the same investment scheme as discussed above in relation to the boards of county commissioners,i.e., a repurchase plan is employed which involves investment in securities of which the board never actually takes physical custody. You inquire as to the legality of this procedure in view of the absence of any statutory authorization for the board to invest in securities when it does not actually take physical custody thereof.
Your letter correctly states the proposition enunciated by this office in AGO 076-61 that a school board has no inherent powers of its own. It may exercise only those powers specifically or by necessary implication authorized by the Legislature. See also, Florida Citrus Commission v. Golden Gift, Inc., 91 So.2d 657 (Fla. 1956); Peters v. Hansen, 157 So.2d 103 (2 D.C.A. Fla., 1963); State v. Mitchell, 188 So.2d 684 (4 D.C.A. Fla., 1966); Mourning v. Family Publications Service, Inc., 411 U.S. 356 (1973). Section 230.23, F. S., enumerates the powers and duties conferred upon the school boards. Section 230.23(10)(k) authorizes the district school board to adopt policies for the investment of funds not immediately needed for expenditures:
 Investment policies — [The school board shall] [a]dopt policies pertaining to the investment of school funds not needed for immediate expenditures, after considering the recommendations of the superintendent. The adopted policies shall make provisions for investing or placing on deposit all such funds in order to earn the maximum possible yield under the circumstances from such investments or deposits.
Section 230.33(12)(j), F. S., requires the district school superintendent, inter alia, to cause to be invested at all times all school moneys not immediately needed for expenditure in accordance with the policies set by the school boards. It is clear, then, that the superintendent must invest pursuant to policies set by the board under its statutory authority. There appears to me to be no limitation either in s. 230.23(10)(k) or s. 230.33(12)(j), F. S., upon either the board or the superintendent corresponding to s. 125.31(2), F. S., which relates to the boards of county commissioners and concerns custody of the securities in which those boards invest. That section, by its terms, applies solely to, and governs only investments made by, the several boards of county commissioners. The district school boards are controlled and governed in their investment program by the Florida School Code, of which Ch. 230, F. S., is a part. In view of the broad statutory language empowering the board to adopt its own policies in regard to investing surplus funds and requiring the superintendent to invest such funds in accordance therewith, and in view of the absence of any limitation concerning custody of securities, it is my opinion that the custody question is one which should be formulated as part of the policy adopted by the board and executed by the superintendent. As noted, the board may exercise those powers specifically granted to it and by necessaryimplication the law also confers `every particular power necessary or proper for complete exercise or performance of the duty that is not in violation of law or public policy.' State v. Michell, supra, at 687. Accordingly, the board is impliedly authorized to formulate a policy with regard to custody of securities as part of its overall investment policy. Until a court of competent jurisdiction declares otherwise, the investment practice of the board, in which the board never has actual custody of securities, is prima facie valid and is controlling.
AS TO QUESTION 3:
Your third question relates to the effect that the new book-entry method of issuing treasury bills will have upon the investment of school boards and boards of county commissioners in such securities. It appears that under the new system, such bills will no longer be serialized or otherwise individually identified. In light of my opinion that serial numbers are not required to be recorded in lieu of actual physical custody, I see no obstacle to continued investment in treasury bills.
Prepared by: Sharyn L. Smith Assistant Attorney General Frank A. Vickory Legal Research Assistant