DOWNEY, Judge.
Appellee, City of Boca Raton, contracted to contribute matching funds for use in the operation of a child day care center. Appellants sued to enjoin the contribution, contending that it is expressly prohibited by the City Charter. From an adverse summary judgment appellants have perfected this appeal.
The record reflects that on September 29, 1980, the City Council of Boca Raton, by resolution, authorized the mayor and city clerk to contract with the State of Florida, Department of Health and Rehabilitation Services for the City to contribute the sum of $29,730.10 to match State and Federal funds to be used for the operation of the Florence Fuller Child Development Center, a tax exempt child care center in Boca Raton, which provides subsidized child care services for individuals who meet the organization’s eligibility requirements for assistance. Appellants, residents and taxpayers of the City, filed a suit for injunction, asserting 1) the City Council exceeded its Charter authority in spending taxpayers’ money for a non-municipal purpose; and 2) the contribution constituted an expenditure of public funds for the indirect benefit of a charitable organization in violation of Section 7.06 of the City Charter. Appellees answered, contending that the contribution did not violate the City Charter because the Florence Fuller Child Development Center was an educational organization and thus did not fall within the purview of the alleged charter limitation. Additionally, the appellees argue the City was authorized to make the questioned contribution under Article VIII, Section 2(b), Florida Constitution, and the Municipal Home Rule Powers Act, Chapter 166, Florida Statutes (1973).
Both parties argued there was no genuine issue of material fact and moved for summary judgment. The trial court granted summary judgment for appellees because it found the Center is an educational organization and is not “a religious, charitable, *1170 benevolent, civic or service organization so as to make this a prohibited transaction under the provision of 7.06 of the Charter.” The judgment further provided:
[T]he Court concludes that a functional test should be applied in transactions of this nature and that test should be determined in light of whether or not the service which is being performed on a contractual basis is, in fact, a municipal service of which the City under the Constitution of the State of Florida and its Charter is permitted to engage.
Initially, we would dispose of the last of the above mentioned defenses by simply pointing out that Article VIII of the Constitution and the Home Rule Powers Act, which grant broad powers to municipalities, are both expressly limited. The Constitution authorizes municipalities to exercise “any power for municipal purposes except as otherwise provided by law.” Article VIII, § 2(b) (emphasis added), while the statute provides that “It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter....” § 166.021(4), Fla. Stat. (1979). The Charter provision involved in this case is Section 7.06 of the Boca Raton City Charter, which provides:
7.06 Expenditure of Funds Limited
No city funds shall be expended in any manner whatsoever to accrue either directly or indirectly to the benefit of any religious, charitable, benevolent, civic or service organization.
In view of the foregoing, we hold the broad grant of Home Rule Powers is limited by Section 7.06 of the Boca Raton City Charter.
Thus, it appears the focal point of the controversy between these parties is whether the Florence Fuller Child Development Center is a charitable organization. No one argues that the City’s contribution does not accrue either directly or indirectly to the Center. Appellees’ main argument is that the Center is an educational organization and thus the contribution is not prohibited by Section 7.06 of the Charter.
The affidavit of the executive director of the Center is attached to the appellees’ motion for summary judgment. Paraphrased, it states, in pertinent part, that the Center is a nonprofit educational organization providing infant nursery, preschool, after school, and summer programs for economically disadvantaged children. It is a licensed child care facility employing seventeen teachers, two social workers, one nurse, two cooks, recreational directors and others. The sources of its funds are 61% public, 15% thrift shop, 12% United Way, 8% contributions, and 4% miscellaneous. Finally, the affidavit states that “[t]he Center is a tax exempt organization under section 501(c)(3) of the Int. Rev. Code as an ‘educational, charitable organization.’ ”
The reflections of this record make it quite clear that the Center is an educational organization. While caring for the enrolled children it provides education of various sorts. This, no doubt, is the functional test the trial judge mentioned in the judgment under review. However, that function in no way diminishes the fact that it is also a charitable organization caring for and teaching disadvantaged children. The courts have been called upon from time to time to define the term “charitable organization.” The definition most frequently presented can be found in In re Coleman’s Estate, 66 Idaho 567, 163 P.2d 847, 848 (1945), wherein the court stated:
The distinctive features of a charitable organization are that it has no capital stock and no provision for making dividends or profits, but derives its funds mainly from public and private charity, and holds them in trust to be expended for charitable and benevolent purposes.
Other definitions found in 6A, Words and Phrases, Charitable Organizations, p. 345-348, are:
“Charitable organization” is one organized for some benevolent purpose for benefit of the public or an indefinite class thereof. Michael v. St. Paul Mercury Indem. Co., D.C.Ark., 92 F.Supp. 140, 144.
******
*1171 Y.M.C.A. organized to improve spiritual and mental condition of young men and supported as agency of community fund is “charitable organization”. Carpenter v. Young Men’s Christian Ass’n, 86 N.E.2d 634, 324 Mass. 365.
* * * * * *
“Charitable organization” has its origin in donations of benevolent persons or in grants from state, and is conducted, not for pecuniary profit of managers or owners, but for promotion of welfare of others. Stearns v. Association of Bar of City of New York, 276 N.Y.S. 390, 154 Misc. 71.
******
Young Men’s Christian Association of Chicago held a “charitable organization” engaged in charitable work, and its personal property used in conducting hotel, cafeteria, news stand, laundry, and haberdashery not subject to taxation by city, since primary object was charity rather than profit, and services furnished in addition to lodging were merely incidental services necessary to comfort of lodgers. People v, Y.M.C.A. of Chicago, 6 N.E.2d 166, 365 Ill. 118.
We would be remiss, perhaps, if we did not mention in passing that the function served by the Florence Fuller Child Development Center is a laudable one; the services are needed and no suggestion is made that this particular center is anything other than an excellent facility. The issue here, however, is one of capacity and authority for the City to expend taxpayers’ money for this particular purpose. The provisions of section 7.06 of the Charter were ratified by the electorate in Boca Raton in February, 1977, some four years after enactment of the Home Rule Powers Act of Chapter 166, Florida Statutes (1973). So we must assume the people of Boca Raton did not want their tax money contributed to charitable organizations even if such a contribution would otherwise be a proper municipal purpose.
Catholic Services Bureau, Inc., was allowed to intervene in the suit. However, the final judgment dismissed the Bureau with prejudice. That aspect of the judgment is the subject of a cross appeal, which we have considered and found to be without merit.
Accordingly, the judgment appealed from is reversed and the cause is remanded with directions to enter summary final judgment for the appellants.
REVERSED AND REMANDED, with directions.
HERSEY and DELL, JJ., concur.