440 So.2d 1277 (1983)
CITY OF BOCA RATON, etc., et al., Petitioners,
v.
Justin V. GIDMAN, et al., Respondents.
No. 62473.
Supreme Court of Florida.
November 10, 1983.
*1278 M.A. Galbraith, Jr., City Atty., Boca Raton, for petitioners.
Steven I. Greenwald of Stuto & Greenwald, Boca Raton, for respondents.
J. Michael Fitzgerald, Jr., and Steven E. Siff of McDermott, Will & Emery, Miami, for Catholic Community Services, Inc., amicus curiae.
ADKINS, Justice.
This case is before us on discretionary review of a question certified to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The city of Boca Raton contracted with the State of Florida Department of Health and Rehabilitative Services to contribute $29,730.10 to match state and federal funds to be used for the operation of the Florence Fuller Child Development Center. The state and federal funds to be contributed were $29,730.10 and $178,380.60 respectively. The center is a non-profit educational child care center in Boca Raton. It provides subsidized child care services including infant nursery care, pre-school and after school programs and summer programs for disadvantaged children.
The respondents, taxpayers and citizens of the city, sued the petitioners, the city of Boca Raton, et al., to enjoin the contribution. They contended that such contribution was expressly prohibited by section 7.06, Boca Raton City Charter which provides:
Expenditure of Funds Limited
No city funds shall be expended in any manner whatsoever to accrue either directly or indirectly to the benefit of any religious, charitable, benevolent, civic or service organization.
*1279 The circuit court found that the child care center is an educational facility rather than a charitable organization. Therefore, the express limitation of the city charter did not prohibit the instant contribution. The judgment also provided:
The Court concludes that a functional test should be applied in transactions of this nature and that test should be determined in light of whether or not the service which is being performed on a contractual basis is, in fact, a municipal service of which the City under the Constitution of the State of Florida and its Charter is permitted to engage.
On appeal, the Fourth District Court of Appeal reversed the judgment of the trial court. Gidman v. City of Boca Raton, 416 So.2d 1168 (Fla. 4th DCA 1982). In doing so it held that although the child care center is undoubtedly an educational facility, it is also a charitable organization. Therefore, any contribution to that organization by the city is proscribed by the city charter. The court further determined that the "functional test" supplied by the trial court could not be applied in this instance. The Florida Constitution authorizes municipalities to exercise "any power for municipal purposes except as otherwise provided by law." Art. VIII, § 2(b), Fla. Const. The court said that in this case the law provides a limitation, the city charter. In addition, The Municipal Home Rule Powers Act provides that the legislature intends to extend to municipalities the exercise of powers for municipal purposes "not expressly prohibited by the constitution, general or special law, or county charter... ." § 166.021(4), Fla. Stat. (1979). The court held that the charter provision is such an express limitation and a "functional test" cannot be applied.
On petition for rehearing, the Fourth District Court of Appeal certified the following question as one of great public importance:
Does Section 7.06 of the Charter of the City of Boca Raton, which provides that
[n]o city funds shall be expended in any manner whatsoever to accrue either directly or indirectly to the benefit of any religious, charitable, benevolent, civic or service organization
prohibit the City Council from contracting with the State of Florida Department of Health and Rehabilitative Services, pursuant to which the City is obligated to contribute public funds to the Department to match State and Federal funds to be used in the operation of a child day care center such as the Florence Fuller Child Development Center described in this case?
416 So.2d at 1171 (on petition for rehearing).
Although we approve the result of the trial court's decision, we disagree with the rationale upon which it was based and we answer the certified question in the negative.
The petitioners argue that while the child care center is a tax-exempt educational facility which is defined as both "educational" and "charitable" by section 501(c)(3) of the Internal Revenue Code, it should not be considered charitable for purposes of the city charter's limitation. They argue further that the section should not be read literally because it would lead to absurd results. Instead, the focus should be on the nature of the services provided. If the services are for a "municipal purpose" the organization which provides them is irrelevant.
The respondents argue that the day care facility does not constitute a valid municipal purpose and, in any event, the instant contribution was to a charitable organization and therefore violates the city charter. We agree in part with the petitioners' argument and disagree in whole with the respondents'.
In order to avoid the limitation of the city charter, the trial court determined the child care center is an educational facility. In order to apply the limitation, the district court of appeal found it to be a charitable organization. To focus only on a label for the organization is to avoid interpretation of the meaning of the charter provision. We think the section is sufficiently ambiguous *1280 to warrant an interpretation of its probable intent.
Article VIII, section 2(b) of the Florida Constitution provides that:
Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
This language was new in the 1968 revision of the constitution. It appears to provide that all municipalities have governmental, corporate and proprietary powers unless otherwise limited by law, whereas under the 1885 Constitution, municipalities had only those powers expressly granted by law. In 1973 the legislature made clear its intent to allow broad exercise of the home rule powers granted by the constitution. The Municipal Home Rule Powers Act, section 166.021(4) of the Florida Statutes (1979) provides in part:
It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the Constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those expressly prohibited (emphasis added).
Thus, whenever a municipality exercises its powers, a two-tiered question should be asked. Was the action undertaken for a municipal purpose? If so, was that action expressly prohibited by the constitution, general or special law, or county charter? See State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978).
"Municipal purpose" is nowhere clearly defined. Section 166.021(2) states that it is "... any activity or power which may be exercised by the state or its political subdivision." Providing day care educational facilities for the disadvantaged would seem to be an activity which may be carried on by the state. The term has been broadly interpreted by this Court and has included such activities as maintenance and operation of a radio broadcasting system by the city. State v. City of Jacksonville, 50 So.2d 532 (Fla. 1951). In that case, the Court stated:
Though there was a time when a municipal purpose was restricted to police protection or such enterprises as were strictly governmental that concept has been very much expanded and a municipal purpose may now comprehend all activities essential to the health, morals, protection and welfare of the municipality.
Id. at 535.
This Court has never addressed the specific issue of whether day care facilities constitute a "municipal purpose". The Supreme Court of Wisconsin, however, has. In Hopper v. City of Madison, 79 Wis.2d 120, 256 N.W.2d 139 (1977), that court held that there is no doubt the supervision and care of the community's children promotes the health and welfare of the city and it is reasonable to conclude that a program to make available and improve day care serves a valid municipal purpose.
If the legislature has determined that an activity is for a municipal purpose, there will be no interference from the courts absent a clear abuse of discretion. 50 So.2d at 534. See also State v. City of Tallahassee, 142 Fla. 476, 195 So. 402 (1940). Section 167.28, Florida Statutes (1971) (repealed 1973) provided:
167.28 Support of public schools, poor, etc. 
The city or town council may provide for the support of the poor, the infirm and the insane, and establish public schools and provide for their maintenance.
That section, along with all other specific grants of power, was deleted in 1973 from the Municipal Home Rule Powers Act. In reference to the deletion, section 166.042, Florida Statutes (1979), provides:
166.042 Legislative intent. 
(1) It is the legislative intent that the repeal by chapter 73-129, Laws of Florida, of chapters 167, 168, 169, 172, 174, 176, 178, 181, 183, and 184 of Florida Statutes *1281 shall not be interpreted to limit or restrict the powers of municipal officials, but shall be interpreted as a recognition of constitutional powers. It is, further, the legislative intent to recognize residual constitutional home rule powers in municipal government, and the Legislature finds that this can best be accomplished by the removal of legislative direction from the statutes. It is, further, the legislative intent that municipalities shall continue to exercise all powers heretofore conferred on municipalities by the chapters enumerated above, but shall hereafter exercise those powers at their own discretion, subject only to the terms and conditions which they choose to prescribe.
It is clear that the legislature still considers the activities enumerated in chapter 167 as proper municipal purposes. Considering the clear legislative intent that municipalities be able to provide for the poor as well as provide educational facilities, and the broad interpretation of "municipal purpose" by the courts, there is no doubt in our minds that provision for day care educational facilities such as the Florence Fuller Child Development Center is indeed a valid municipal purpose which is rationally related to the health, morals, protection and welfare of the municipality.
The respondents propose that a strict construction of the city charter is required and therefore, that the instant expenditure is expressly prohibited by it. This proposition relies mainly on Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654 (1933).
Another general rule universally recognized is that the delegated corporate powers to municipalities, particularly grants of power that are out of the usual range, and that may result in public burdens, or which in their exercise touch the right to liberty or property or any common law right of the citizens must be strictly construed... .
108 Fla. at 486, 146 So. at 656 (citing Ex Parte Sims, 40 Fla. 432, 25 So. 280, 282 (1898)). The respondents' reliance is misplaced. Heriot was decided before the enactment of article VIII, section 2(b) and the Home Rule Powers Act. The above excerpt applies to a specific grant of power. Local governments now have all the powers necessary to function vis-a-vis the Florida Constitution and The Municipal Home Rule Powers Act.
What we are concerned with here is the interpretation of a limitation of those powers already granted. In construing statutes, it is a primary rule that the intent is the vital part. It is the essence of the law. The primary rule of construction is to ascertain and give effect to that intent. State v. Sullivan, 95 Fla. 191, 116 So. 255 (1928). No literal interpretation should be given that leads to an unreasonable or ridiculous conclusion or to a purpose not designated by the lawmakers.
If interpreted literally, the charter limitation would hamstring the city in carrying out its governmental functions. It would prevent the city from contracting with any non-profit organization to provide municipal services. This would require the city to pay a much higher price for any service which is otherwise available through a charitable or service organization. In this instance, the community is to receive $237,840.80 in day care services from the charitable facility at a cost to the city of $29,730.10. It is illogical to require the city to choose between contracting with a profit-making organization and thereby paying the entire cost, or not providing for the service at all. It could not have been the intention of the people to require such an inefficient allocation of economic resources. There is no danger that the city's funds would be spent for some non-municipal purpose. The entire amount contributed by the federal, state and municipal governments is earmarked for the Florence Fuller Child Development Center. The center operates only in Boca Raton. The funds are to be under the administrative control of the State of Florida Department of Health and Rehabilitative Services and eligibility requirements are set by the department. The center has no power to expend these funds for any purpose other than child care services for the Boca Raton community. *1282 The beneficiaries of the city's contribution are the disadvantaged children. Any "benefit" received by the charitable organization itself is insignificant and cannot support a reasonable argument that this is the quality or quantity of benefit intended to be proscribed.
A law should be construed together with any other law relating to the same purpose such that they are in harmony. Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981); Garner v. Ward, 251 So.2d 252 (Fla. 1971). Courts should avoid a construction which places in conflict statutes which cover the same general field. Howarth v. City of Deland, 117 Fla. 692, 158 So. 294 (1934). The law favors a rational, sensible construction. Realty Bond & Share Co. v. Englar, 104 Fla. 329, 143 So. 152 (1932).
Section 2.01, Boca Raton City Charter, provides:
Powers. The City of Boca Raton shall have all governmental, corporate and proprietary powers to enable it to conduct municipal functions and render municipal services, and may exercise any power for municipal services except as otherwise provided by law.
This language is identical to that of article VIII, section 2(b). Section 166.021(4) expresses the intention of the legislature to secure for municipalities the broad exercise of the home rule powers granted by the constitution. In addition, section 165.021, known as the Formation of Local Government Act, provides in part:
165.021 Purpose.  The purpose of this act is to provide standards, direction, and procedures for the formation of local governmental units in this state and the provision of local governmental services so as to:
(1) ...
(2) Assure adequate quality and quantity of local public services.
A literal interpretation of section 7.06, Boca Raton City Charter would not only lead to an absurd result but would also place it in direct conflict with other laws relating to the same purpose. We refuse to do so and quash the decision of the district court on the grounds stated. The cause is remanded to the district court of appeal with instructions to affirm the judgment of the trial judge for the reasons stated herein.
It is so ordered.
ALDERMAN, C.J., BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.