448 So.2d 1242 (1984)
CITY OF WINTER PARK, a Municipal Corporation, Appellant,
v.
Louis J. MONTESI, Appellee.
No. 83-222.
District Court of Appeal of Florida, Fifth District.
April 26, 1984.
*1243 Steven D. Hutton of Winderweedle, Haines, Ward & Woodman, P.A., Winter Park, for appellant.
David C. Lanigan of Pino, Knox & Smith, Orlando, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
The City of Winter Park appeals from an order permanently enjoining it from selling sinkhole photographs. The trial court found that the city, in selling such photographs, was engaged in a proprietary function which served no legitimate municipal or public purpose. It also found that the city did not apply to itself, as a municipal corporation, the regulations that are by law applicable to the business activities engaged in by Montesi, a private entrepreneur who also sold sinkhole photographs.
The facts of this case are "bottomed" on a large sinkhole which developed in Winter Park on May 9, 1981, and instantly became an attraction for local residents and tourists. Montesi began selling photographs of the sinkhole from a store located on Fairbanks Avenue which was within one hundred yards of the sinkhole. In mid-June, 1981, the city rejected Montesi's request to conduct retail sales from a table on private property nearer the sinkhole. The city rejected the request because the property was zoned partly for office use only (which classification prohibits retail sales) and partly for commercial use (which permits retail sales only from an enclosed building). Following this rejection, the city constructed a screened enclosure on private property, adjacent to the property Montesi sought to use. On July 9th, the city began selling sinkhole photographs from the enclosure. Four days later, the enclosure was moved to a nearby public park. Sales continued until entry of a temporary injunction against the city on August 20, 1981.
The city argues that the trial court erred in finding that it was not performing an activity within the powers of a municipal corporation in this state.
Article VIII, section 2(b) of the Florida Constitution, provides that:
Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
The broad nature of this grant of power was recognized by the Florida Supreme Court in State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978), when the court noted that:
Article VIII, Section 2, Florida Constitution, expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services. The only limitation on that power is that it must be exercised for a valid `municipal purpose.' It would follow that municipalities are not dependent upon the Legislature for further authorization. Legislative statutes are relevant only to determine limitations of authority.
See also City of Boca Raton v. Gidman, 440 So.2d 1277, 1280 (Fla. 1983).
Chapter 166, Florida Statutes (1981), known as the "Municipal Home Rule Powers Act" re-emphasizes the broad grant of power given to municipalities in section 166.021:
(1) As provided in article VIII, section 2(b) of the state constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal *1244 purposes, except when expressly prohibited by law.
* * * * * *
(4) The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution... .
As stated in Gidman, whenever a municipality exercises its powers, a twotiered question is presented. First, was the action taken for a municipal purpose? If so, was that action expressly prohibited by the constitution, general or special law, or county charter? 440 So.2d at 1280. Here, there was no finding below, nor have we been able to discover, any constitutional provision or enactment which prohibits a city from selling souvenir photographs such as the ones in this case. Thus, the only question is whether such sales constitute a municipal purpose.
Section 166.021(2), defines "municipal purpose" as "any activity or power which may be exercised by the state or its political subdivision." In determining whether an activity is a valid "municipal purpose", review of case law regarding what constitutes a "municipal purpose" is necessary.
Recently, in Gidman, the supreme court held that provision for day care educational facilities is a valid municipal purpose. The court noted that the term "municipal purpose" has been broadly interpreted and has included such activities as maintenance and operation of a radio broadcasting system by a city. See State v. City of Jacksonville, 50 So.2d 532 (Fla. 1951). In City of Jacksonville, the court stated:
Though there was a time when a municipal purpose was restricted to police protection or such enterprises as were strictly governmental that concept has been very much expanded and a municipal purpose may now comprehend all activities essential to the health, morals, protection and welfare of the municipality.
50 So.2d at 535.
Other cases have upheld a city's power to construct and operate a parking garage, Gate City Garage v. City of Jacksonville, 66 So.2d 653 (Fla. 1953), build and operate a marina and civic auditorium, Panama City v. State, 93 So.2d 608 (Fla. 1957), acquire and maintain a golf course, West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361 (1929), provide fishing facilities in a public park and gain revenue by leasing a portion of the park to a business firm for construction and operation of a fishing pier, Sunny Isles Fishing Pier v. Dade County, 79 So.2d 667 (Fla. 1955) and own and operate an auditorium, including booking attractions for the auditorium. Starlight Corp. v. City of Miami Beach, 57 So.2d 6 (Fla. 1952). See also Panama City v. Seven Seas Restaurant, Inc., 180 So.2d 190 (Fla. 1st DCA 1965) (Panama City empowered to furnish catering services to organizations renting city civic center). These cases indicate that not only does a municipality in Florida have the power to engage in proprietary functions so long as such power is exercised for "municipal purposes" but also the mere fact that the city operated service competes with a privately owned business does not invalidate the city's enterprise. See Starlight Corp. v. City of Miami Beach; Gate City Garage v. City of Jacksonville.
In State v. City of Miami, 379 So.2d 651 (Fla. 1980), the supreme court, in validating revenue bonds to finance a convention center, found that the facility served a "public purpose" in that it would provide a forum for educational, civic and commercial activities and would increase tourism and trade. While that case dealt with the term "public purpose," it is instructive on the issue here. See Gate City Garage v. City of Jacksonville (wherein the supreme court indicated that the phrases "municipal purpose" and "public purpose" are similar). In another case, City of Jacksonville v. Oldham, 112 Fla. 502, 150 So. 619 (1933), the supreme court held that a city may levy taxes to promote and advertise the community.
Considering the evidence here in light of these cases, we note there was testimony from the city manager that the photographs of the sinkhole were initially *1245 made for educational and scientific purposes and that they were sold by the city in response to demand from the public, including teachers, engineers, city residents and tourists. This testimony establishes that the city, in selling pictures of an unusual natural phenomenon within its corporate limits was furthering the educational needs of the community as well as transmitting information about the city to others, which has the logical effect of promoting knowledge about the city and increasing tourism to the area. Under the case law above, the sale of the pictures constituted a valid municipal purpose.
Montesi claims that State v. City of Miami and other cases cited above stand for the proposition that a city may act where there is need of a collective effort by a public entity because private enterprise could not or was not likely to take as effective action as could be taken by the city. Montesi claims that here private enterprise was just as capable of selling the souvenirs and there was no need for the city to undertake such activity. However, this is not the test for determining whether an activity is a municipal or public purpose and the cases clearly indicate this. For instance, in Sunny Isles Fishing Pier v. Dade County, Gate City Garage v. City of Jacksonville and Starlight Corp. v. City of Miami Beach, the complaining parties were private businesses already in existence which were providing identical services to those sought to be undertaken by the municipalities. The supreme court on each occasion upheld the cities' authority to engage in such activities and as noted above, in Starlight Corp., and Gate City Garage, specifically declared that where such activities served a public or municipal purpose, it was not a valid objection that the city would be engaged in competition with private business.
The remaining question is whether the city could be enjoined for failing to apply to itself the regulations which were applicable to Montesi. When a municipality operates in its proprietary capacity, it is governed by the same laws and may exercise the same rights as a private corporation engaged in a similar undertaking. Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 220 (1929); Edris v. Sebring Utilities Commission, 237 So.2d 585 (Fla. 2d DCA 1970).
First, Montesi claims that the city did not pay rent for the use of private property. This argument has no merit because at the time of the injunction, sales were no longer being made from private property. Also, the question of rent is a matter of concern only between the landowner and the city.
Second, the claim that the city failed to file under section 865.09, Florida Statutes (1981), the Fictitious Name Statute, also has no substance because there were no allegations or proof that the city was using a fictitious name.
Montesi's final claim that the city engaged in unfair competition and violated anti-trust laws by not allowing him to sell such photographs on private property near the sinkhole cannot be supported. Montesi was in no way prevented or restricted from selling sinkhole photographs from any location so long as he complied with applicable zoning laws. The record indicates that the sales activity of the city did not violate the applicable zoning restrictions.
We conclude that the sale of the photographs in this instance served a valid municipal purpose and that the city did not engage in improper conduct. Therefore, the order permanently enjoining the city is reversed.
REVERSED.
COBB and SHARP, JJ., concur.