Ms. Sharon V. Delegal City Attorney City of Pompano Beach Post Office Box 2083 Pompano Beach, Florida 33061
Dear Ms. Delegal:
You have asked substantially the following questions:
1. May a newspaper which satisfies the criteria set forth in ss.50.011 and 50.031, F.S., be utilized for the publication of notices of proposed municipal ordinances as required in s.166.041(3)(a), F.S.?
2. When a statute such as ss. 171.031(4),163.3184(15)(c), or 166.041(3)(c)2., F.S., specifically refers to a "newspaper of general circulation," may a newspaper which satisfies the requirements of ss. 50.011 and 50.031, F.S., be used to publish public hearing notices prescribed by those sections?
3. May a municipality designate a newspaper which meets the requirements of ss. 50.011 and 50.031, F.S., as the official publication for legal notices and, in addition, spend city funds to publish duplicate notices in other newspapers in an effort to reach a greater number of citizens? These secondary newspapers, publishing duplicate notice, would not be required to meet the criteria set forth in ss. 50.011 and 50.031, F.S.
In sum:
1. A newspaper which meets the requirements of ss. 50.011 and50.031, F.S., may be utilized for the publication of notices of proposed municipal ordinances as required in s. 166.041(3)(a), F.S., as long as the terms of this section are also met.
2. To the extent particular statutes mandate the inclusion of additional or specific information in a legal notice published in a newspaper, compliance with these requirements is necessary in addition to those basic requirements set forth in ss. 50.011 and 50.031, F.S.
3. A municipality may designate a newspaper as the official publication for legal notices of the municipality if the governing body determines that the action is undertaken for a municipal purpose. Likewise, if the City of Pompano Beach determines that a municipal purpose is satisfied by the expenditure of public funds to publish duplicate legal notices, such publication would be appropriate.
Your questions are interrelated and will be answered together.
Initially, I would note that the determination of whether any particular publication meets the requirements set forth in ss.50.011 and 50.031, F.S., is a mixed question of law and fact which the courts must resolve; this office possesses no authority to make such a determination.[1]
Florida follows the majority view whereby measures passed in contravention of notice requirements are invalid, that is, they are null and void if not strictly enacted pursuant to statutory requirements.[2] Thus, if the City of Pompano Beach does not follow the appropriate notice requirements for official actions, those actions are invalid.
Section 50.011, F.S., provides that any statutorily required legal notice, advertisement, publication or constructive service of process shall be published in a newspaper printed and published periodically once a week or oftener, containing at least 25 percent of its words in the English language, entered or qualified to be admitted and entered as second-class matter at a post office in the county where published, for sale to the public generally, available to the public generally for the publication of official or other notices and customarily containing information of a public character or of interest or of value to the residents or owners of property in the county where published, or of interest or of value to the general public.
Further, section 50.031, F.S., requires, in part, that such newspapers also shall have been in existence for 1 year and shall have been entered as second-class mail matter at a post office in the county where published, or in a newspaper which is a direct successor of a newspaper which together have been so published.
In sections 50.011 and 50.031, F.S., the Legislature has prescribed extensive and detailed requirements for the publication of legal notice and process in newspapers. In certain instances however, the Legislature has imposed requirements for newspaper publication in addition to those pre-scribed by Ch. 50, F.S. These additional requirements are not inconsistent with the provisions of Ch. 50, F.S., but satisfy the need for greater due process protections for citizens when local governments undertake particular actions.
Thus, in section 163.3184(15)(c), F.S., certain advertisements relating to proposed comprehensive plans or plan amendments must satisfy additional statutory requirements and must be published "pursuant to chapter 50." In s. 166.041(3)(a), F.S., additional requirements are imposed for newspaper advertisements when the subject matter is the adoption of municipal ordinances and reso-lutions. As this office has stated, "[s]ection 166.041, F.S., establishes a uniform procedure for the adoption of municipal ordinances and resolutions that cannot be lessened or reduced by any municipality in the state."[3] Thus, the requirements contained in ss. 50.011 and50.031, F.S., provide a base upon which additional requirements have been added by statutes such as ss. 163.3184(15)(c), and166.041(3)(c)2., F.S. For purposes of Ch. 171, F.S., which deals with municipal annexation or contraction, a "[n]ewspaper of general circulation" is defined as
"a newspaper printed in the language most commonly spoken in the area within which it circulates, which is readily available for purchase by all inhabitants in its area of circulation, but does not include a newspaper intended primarily for members of a particular professional or occupational group, a newspaper whose primary function is to carry legal notices, or a newspaper that is given away primarily to distribute advertising."[4]
Section 171.0413, F.S., which prescribes municipal annexation procedures requires that an ordinance proposing the annexation of property must be adopted pursuant to the procedures for the adoption of a nonemergency ordinance established by s. 166.041, F.S. However, notice of the referendum on annexation of such property is to be published in a newspaper of general circulation in the area in which the referendum is to be held.[5]
Thus, while adoption of an annexation ordinance must be in compliance with the general requirements established by s. 166.041, F.S., that is, they must comply with Ch. 50, F.S., and the additional requirements imposed by Ch. 166, F.S., notice to the residents of the area to be annexed is to be provided in the manner which will most readily assure that local residents and local property owners receive effective notice. To the extent that the Legislature has made specific provision for advertisement of notice of annexation referenda in a particular type of publication, that legislative direction should be followed.[6]
You have asked whether a municipality may designate a newspaper which complies with ss.50.011 and 50.031, F.S., as the official publication for legal notices of the municipality. Broad home rule powers have been conferred upon municipalities through the enactment of Ch. 166, F.S., the Municipal Home Rule Powers Act, which implements the provisions of s. 2, Art. VIII, State Const.[7]
Pursuant to s.166.021(1), F.S., municipalities "have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." The Florida Supreme Court has devised a two-part test to deter-mine whether the exercise of municipal powers is appropriate in a specific case: is the action undertaken for a municipal purpose; and if so, is such action expressly prohibited by the Constitution, general or special law, or county charter?[8]
I am aware of no express prohibition against the designation by a municipality of an official publication for legal notices; however, any determination of whether such action satisfies a municipal purpose is a determination which must be made by the legislative and governing body of the municipality.
Finally, you have asked whether the City of Pompano Beach may spend municipal funds to publish duplicate legal notices in newspapers which do not meet the criteria set forth in ss. 50.011
and 50.031, F.S., while also publishing legal notice in its officially designated newspaper. Public funds may properly be spent only for a public purpose or function which is expressly authorized by law or which must be necessarily implied to carry out the purpose or function expressly authorized.[9]
Thus, municipal funds may be used only for a municipal purpose and only when properly budgeted for such use. Again, it is the responsibility of the legislative and governing body of the municipality to determine whether a municipal purpose is served by the expenditure of additional moneys to publish duplicate legal notices. However, the ex-pressed purpose for this expenditure, i.e., the notification of municipal citizens of governmental actions which will affect their lives and property, would appear to satisfy a municipal purpose.
Sincerely,
Robert A. Butterworth Attorney General RAB/tgh
[1] See, Selverstone v. Jacobson, 116 So. 724 (Fla. 1928) (determining that the Miami Review and Daily Record was a newspaper within the terms of the state statutes providing for constructive service by publication); AGO 73-149.
[2] Daytona Leisure Corporation v. City of Daytona Beach,539 So.2d 597, 599 (5 D.C.A. Fla., 1989). See also, Ellison v. City of Fort Lauderdale, 183 So.2d 193 (Fla. 1966); Fountain v. City of Jacksonville, 447 So.2d 353 (1 D.C.A. Fla., 1984).
[3] Attorney General Opinion 81-32 (the procedures contained in s.166.041, F.S., are the minimum requirements necessary for the adoption of a municipal ordinance although a municipality may specify additional or more stringent requirements for the adoption or enactment of ordinances or prescribe procedures in greater detail than are contained in s. 166.041, F.S.). And see, s.166.041(6), F.S.
[4] Section 171.031(4), F.S.
[5] Section 171.0413(2)(b), F.S.
[6] See, Alsop v. Pierce, 19 So.2d 799, 805-806
(Fla. 1944); Thayer v. State, 335 So.2d 815, 817
(Fla. 1976).
[7] See, City of Miami Beach v. Rocio Corporation, 404 So.2d 1066,1069 (3 D.C.A. Fla., 1981), pet. for rev. den., 408 So.2d 1092
(Fla. 1981); State v. City of Sunrise, 354 So.2d 1206, 1209
(Fla. 1978).
[8] City of Boca Raton v. Gidman, 440 So.2d 1277, 1280
(Fla. 1983). See also, City of Winter Park v. Montesi,448 So.2d 1242 (5 D.C.A. Fla., 1984), pet. for rev. den.,456 So.2d 1182 (Fla. 1984).