Mr. John W. Bowen Pinellas County School Board Attorney Post Office Box 2942 Largo, Florida 33779-2942
Dear Mr. Bowen:
On behalf of the School Board of Pinellas County, you ask substantially the following question:
May the school board enter into an agreement with the City of Gulfport pursuant to sections 234.01(1)(d) and 234.211(1)(a), Florida Statutes, to transport students to a city operated after-school care program and require the city to indemnify the school board from any liability arising from the use of the school buses?
In sum:
The restrictive provisions of section 234.211, Florida Statutes, are not appropriate for a situation where school children are being transported from school to an after-school care program operated by a municipality within the school district. Since the school board is, in effect, doing nothing more than performing its usual after-school function of transporting students to a particular destination within the school district and since after-school care can serve a school purpose as well as a municipal purpose, the school district should work in cooperation with the city to deliver the children to the city program through regular school bus routes.
Recognizing the realities of modern society, the City of Gulfport has established an after-school care program to meet the after-school needs of children living within the city.[1] The school district and the city are to be commended for seeking to establish a means of transporting the children to the program. Such after-school care programs serve a valid school purpose as well as a valid municipal purpose, as seen by the fact that school districts are specifically authorized to provide after-school programs.[2]
In the situation described in your inquiry, the school buses would be transporting children from school to this governmentally operated after-school program, in much the same manner the buses transport other children to stops in their neighborhoods. This is not a situation where the city wishes to rent the school buses to be used for activities related to its after-school program. Rather, the city is merely interested in having the school buses transport students from school to the after-school care program location, much as the buses would otherwise transport the children to their homes.
Section 234.211, Florida Statutes, authorizes the school board, under certain conditions, to enter into agreements with various public and private nonprofit organizations or civic organizations for the use of the school district's buses.[3] It requires that the school district be indemnified from any and all liability arising from the use of such buses pursuant to an agreement authorized by this section.[4] It also prohibits the use of the flashing red lights and white strobe lights and requires the covering of "School Bus" inscriptions on the front and rear of the buses when they are being used for nonschool purposes.[5]
The children's safety must be paramount in any reading of the statutes. Just as the flashing lights and "School Bus" inscriptions are vital to the children's safety while they are being transported to their homes after school, so they are vital to safety as the children are being transported to a governmentally operated after-school destination.
Section 234.211, Florida Statutes, with its indemnification requirement and prohibitions against the bus being identified as a school bus and using the red and strobe lights, is not, in my opinion, appropriately applied to a situation where school children are being transported from school to an after-school program operated by a municipality within the school district. In this situation, the school board is, in effect, being asked to do little more than perform its usual after-school function of transporting students to a particular destination within the school district. Because after-school care can serve a legitimate school purpose as well as a municipal purpose, the school district should work in cooperation with the city to ensure the safe delivery of the children to the city program through regular school bus routes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, e.g., City of Boca Raton v. Gidman, 440 So.2d 1277
(Fla. 1983), in which the court upheld the authority of a municipality to contribute funds for the use and operation of a child-care center as a valid municipal purpose that is rationally related to the health, morals, protection and welfare of the city.
[2] See, e.g., s. 228.061(3), Fla. Stat., authorizing school districts to provide school-age child care programs consisting of educational and recreational programs provided before and after the regular school day and during school holidays to children eligible to attend public schools. And see, s. 233.0612(11), Fla. Stat., authorizing each school district to provide students with before-school and after-school programs.
[3] See, s. 234.211(1)(a), Fla. Stat., which provides:
"Each school district may enter into agreements with the governing body of a county or municipality in the school district . . . for the use of the school buses of the school district by departments, boards, commissions, or officers of such county or municipality . . . for county, municipal, or state purposes, including transportation of such transportation disadvantaged. Each such agreement shall provide for reimbursement of the school district, in full or in part, for the proportionate share of fixed and operating costs incurred by the school district attributable to the use of such buses pursuant to such agreement."
[4] Section 234.211(2)(a), Fla. Stat.
[5] Section 234.211(3), Fla. Stat.