MELVIN, Judge.
Defendant-appellant, the City of Jacksonville, and the defendant, appellee and cross-appellant Seaboard Coast Line Railroad Company appeal from final judgments entered against them in litigation that arose out of a collision between an automobile driven by plaintiff’s decedent, Maurice Charles Franco, Jr., and a Seaboard train at a crossing near the intersection of Lane Avenue and Beaver Street in the City of Jacksonville, Florida. The appellant, City of Jacksonville, seeks to reverse an indemnity judgment entered in favor of Seaboard Coast Line Railroad for a portion of plaintiff’s judgment, and the appellee and cross-appellant Seaboard Coast Line Railroad Company seeks reversal of a judgment entered by the trial court, the effect of which was to refuse to grant to the railroad full indemnity from the City for the total amount of plaintiff’s judgment. These cases have been consolidated for the purpose of appellate review. Plaintiff Franco’s judgment is not here for review.
At all times material, the City of Jacksonville and Duval County were merged into a single governmental unit. The City of Jacksonville will be referred to as the City and Seaboard Coast Line Railroad Company will be referred to as Seaboard. Plaintiff and her decedent will be referred to as Franco.
Franco sued Seaboard alleging that it was negligent in the maintenance of the crossing and the operation of its train at the time and place of the accident. Seaboard filed a third party complaint against the City alleging that if the accident was due to any cause other than decedent’s own negligence, it was caused by the City’s failure to abide by its contractual obligation with Seaboard to maintain its traffic signal and traffic signal interconnection system at the Lane-Beaver intersection and alleged further that said indemnity contract obligated the City to indemnify Seaboard from all liability and damage that was a result of the accident.
Franco filed a separate cause of action against the City alleging that the City’s traffic signal interconnection system at the Lane and Beaver intersection did not operate so as to allow northbound motor vehicular traffic on Lane Avenue time to clear the tracks when the railroad signals were activated, all of which forced Franco to stop on the tracks. It was established that he was faced with and trapped by a red light blocking him and the cars ahead of him on Lane Avenue from entering the Beaver Street intersection.
Beaver Street and Seaboard tracks, separated by a distance of 40 feet, run in an east-west direction and Lane Avenue runs in a north-south direction across the tracks to intersect Beaver Street.
The record reveals that by reason of an indemnity agreement entered into between the City and Seaboard, Seaboard allowed the City to connect a traffic signal interconnection system controlling the City’s traffic light at the Lane Avenue-Beaver Street intersection to Seaboard’s warning system so that when an approaching train would activate Seaboard’s flashing red lights and bells at the crossing warning of the train’s approach, the City’s interconnect system would also cause the traffic light at said intersection to turn to and remain green, thus guaranteeing track clearance of traffic going north on Lane Avenue. Some years *211 before this tragic accident, a city engineer decided to disconnect this interconnect system located within the traffic control box owned by the City and such system was not thereafter reconnected. This action was known by other responsible traffic engineers of the City and County. When this accident occurred, the railroad crossing was protected by flashing lights, warning bells and gates, all in conformity with maximum safety regulations. All such safety warning signals were operating in proper fashion. The record further reflects that the train had its headlights on and its whistle was blowing. The speed of the train was within the range set for that area.
Following a lengthy trial, the jury returned its verdict in the sum of $171,000 for the plaintiff individually and the sum of $25,000 for the decedent’s estate. The verdict further found that the conduct of plaintiff’s decedent amounted to two percent of the total negligence that was the legal cause of the accident. The verdict was against both the City and Seaboard and found that 90 percent of the total negligence was caused by the City and eight percent was caused by Seaboard. The trial court then entered a judgment against the City and Seaboard for $196,000 and submitted to the jury the third party contract indemnity claim of Seaboard against the City. The jury returned its separate verdict on such claim finding that Seaboard was not entitled to indemnity for the entire amount of the judgment, but that it was entitled to be indemnified “to the extent that the negligence of the City of Jacksonville contributed to the decedent’s death”. As between the City and Seaboard, that amounted to 90 percent of the total negligence involved.
The trial court, based upon such verdict, entered judgment in favor of Seaboard and against the City for an amount in excess of $15,680 (eight percent of $196,000) which Seaboard may pay to Franco by reason of the stated total judgment entered against the City and Seaboard.
The issues of merit presented here are whether Seaboard is entitled to contractual indemnity from the City for the entire amount of the judgment against it or whether such contractual indemnity is limited to the amount of the judgment attributable solely to the City’s negligence and breach of contract.
The indemnity contract entered into between The City and Seaboard provides:
“6. Railroad shall have no responsibility or liability for any loss of life or injury to person, or loss of or damage to property, growing out of or arising from the irregular operation of the traffic signals of County and/or the railroad train approach warning signals resulting from or in any manner attributable to the interconnection of County’s traffic signals with the said railroad train approach warning signals, and County insofar as it lawfully may, agrees to indemnify and save Railroad harmless from all such loss, injury or damage; PROVIDED, HOWEVER, AND IT IS DISTINCTLY UNDERSTOOD AND AGREED that the provisions of this article shall have no application to any loss, injury or damage growing out of or resulting from the failure or improper operation of the railroad train approach warning signals when such failure or improper operation is not attributable to the presence or existence of County’s interconnection with the warning signals of the Railroad; it being the intention of the parties that Railroad shall have and assume the same responsibilities and obligations with respect to the railroad train approach warning signals and the operation thereof that it had prior to the installation of the interconnection of County’s traffic signals with said railroad train approach warning signals and no others, and that County shall have and assume sole responsibility for its interconnection with the said railroad train approach warning signal and the operation or functioning thereof.” (Emphasis supplied)
It is our view that this indemnity contract is written in “clear and unequivocal language” and was so worded as to place with the City the sole responsibility for any *212 and all damages arising out of or attributable to the irregular operation of the traffic signals by the county that resulted from or was in any way attributable to the interconnection of the county’s traffic signals with the Seaboard approach warning signals. See Leonard L. Farber Company, Inc. v. Jaksch, 335 So.2d 847 (Fla.4th DCA 1976). The indemnity contract did not reveal an intention to indemnify Seaboard as to an injury or damage arising solely from its own negligence. Thus, it is that if the jury concluded that Seaboard was, in the degree of negligence assigned to it, derelict in not taking some action to require the City to conform to its contract and to keep the City’s warning interconnect system in operational order, or because of some other kindred type logic, we note that such nonaction related to, and was directly attributable to, the failure of the City to maintain the interconnect warning system in accordance with its contract. This tragedy was a direct outgrowth of the action of the city engineer in disconnecting from the City’s traffic control box the interconnect warning system and the failure of the City over a period of years to cause the same to be reconnected. The City failed in its duty to protect northbound traffic on Lane Avenue against a traffic trap which the interconnect warning system was designed to prevent.
We hold that by its indemnity contract the City had obligated itself to pay or indemnify Seaboard for the total sum of the judgment, regardless of indemnitee’s contributing negligence, if any there be. The parties have so contracted. The contract is to be abided by. See also Springs Lock Scaffolding, etc. v. Chas. Poe Masonry, Inc., 358 So.2d 84 (Fla.3d DCA 1978).
■ The final judgment for partial indemnity entered for Seaboard is hereby REVERSED with directions to enter an indemnity judgment in favor of Seaboard for the total amount of its judgment exposure to Franco.
MILLS, Acting C. J., and ERVIN, J., concur.