Mr. Gerald R. Colen City Attorney City of St. Petersburg Beach Devito, Colen Forlizzo Attorneys at Law 5362 Central Avenue St. Petersburg, Florida 33707
Dear Mr. Colen:
This is in response to your request for an opinion on substantially the following question:
 WHETHER THE CITY OF ST. PETERSBURG BEACH IS AUTHORIZED TO CONTRACT WITH A PRIVATE FIRM FOR THE PROVISION OF MUNICIPAL FIRE PROTECTION SERVICES AND EMERGENCY MEDICAL SERVICES?
You state that the city in the past has provided such municipal services as sewage disposal, police protection, fire protection, and garbage and trash service, but has recently contracted with a private corporation for the provision of garbage and trash pick-up services. Sewage disposal services are now provided through a regional treatment plant located in the City of St. Petersburg. The city is now considering contracting with a private corporation for the provision of fire protection and emergency medical services to the residents of St. Petersburg Beach and wants to know if it has the authority to do so.
Your inquiry sets forth the present charter of the city, adopted by the electors on March 2, 1976, as providing in part:
 The City of St. Petersburg Beach is created which shall have all governmental, corporate and proprietary powers to enable it to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
Your letter further indicates that no provision of that charter nor ordinance of the city prohibits the city from contracting with a private firm for the provision of fire protection and emergency medical services.
The Florida Constitution in section 2(b) of Article VIII provides that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. . . ." The Municipal Home Rule Powers Act, Ch. 166, F.S., implementing the constitutional provisions provides in s166.021(1), F.S., that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law." Subsection (2) of s 166.021 defines "municipal purpose" to mean "any activity or power which may be exercised by the state or its political subdivisions." Subsection (4) further provides that the provisions of s 166.021 shall be construed so as to secure for municipalities the broad exercise of home rule powers granted by the Constitution, and to extend to municipalities the exercise of powers not expressly prohibited by the Constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. Limitations upon the legislative and governmental powers vested in the governing body of a municipality must be contained in a general or special law or county or municipal charter (see, s 166.021[4], F.S.), or in the Constitution (see, s 166.021[3] and [4], F.S.). As stated by the Florida Supreme Court in State v. City of Sunrise,354 So.2d 1206, 1209 (Fla. 1978): "Article VIII, Section 2, Florida Constitution, expressly grants to every municipality in this state authority to conduct municipal services. The only limitation on that power is that it must be exercised for a valid `municipal purpose.'" And see, City of Venice v. Valente, 429 So.2d 1241 (2 D.C.A.Fla., 1983). I am not aware of any express constitutional or statutory limitation on the power of a municipality to contract with a private corporation for the purpose of providing fire protection services to the inhabitants and property owners of the municipality.
The Florida Supreme Court in City of Boca Raton v. Gidman,440 So.2d 1277 (Fla. 1983), stated that whenever a municipality exercises its powers, a two-tiered question is presented. First, whether the action to be taken is for a municipal purpose. Second, if so, whether that action is expressly prohibited by the Constitution, general or special law, or county charter. Thus, if the provision of fire protection and emergency medical services by the city to its inhabitants and property owners through the agency of a private corporation or other entity constitutes a "municipal purpose," and is not distinctly and explicitly prohibited by the Constitution, statute or charter, then the city possesses the home rule power to enter into contractual arrangements with a private organization to provide such services to the city. Unquestionably, the provision of fire protection by a city is a municipal function and an exercise of the police power. See, e.g., City of Belleview v. Belleview Fire Fighters, 367 So.2d 1086, 1087 (1 D.C.A.Fla., 1979); Lester v. City of St. Petersburg, 183 So.2d 589, 590 (2 D.C.A.Fla., 1966). See generally, 62 C.J.S. Municipal Corporations ss 254, 591, 592; 16 McQuillin Municipal Corporations ss 45.01-45.05 (3rd Rev. ed. 1979); AGO 41-526, August 19, 1941, Biennial Report of the Attorney General, 1941-1942, p. 578. Therefore, since there are no express constitutional, charter, ordinance or statutory provisions which directly and explicitly prohibit the city from providing fire protection and emergency medical services to its residents and property owners through the agency of a private entity and to that end to enter into a contract with such entity to provide such services, I am of the opinion that the city may proceed under its home rule power to accomplish this purpose.
Prior to the passage of the Municipal Home Rule Powers Act, with respect to the power of a municipal corporation to enter into a contract which would extend beyond the term for which the members of the governing body were elected, a distinction was drawn based upon the subject matter of the contract — whether legislative or governmental, or whether business or proprietary. See, Daly v. Stokell, 63 So.2d 644 (Fla. 1953); and generally, 56 Am.Jur.2d Municipal Corporations s 154. This general rule, however, appears to have been abrogated in Florida by the passage of the Municipal Home Rule Powers Act, Chapter 166, F.S. See, Town of Indian River Shores v. Coll, 378 So.2d 53 (4 D.C.A.Fla., 1979); Tweed v. City of Cape Canaveral, 373 So.2d 408 (4 D.C.A.Fla., 1979), cert. den.,385 So.2d 755 (Fla. 1980). In Tweed v. City of Cape Canaveral, the city council had fired the police chief before the expiration of his contract of employment and the trial court had held that the contract was void in that it purported to bind the city "to a contract involving a governmental function of the City beyond the terms of office of the City Council who entered into the contract." Id., at 409. The district court, however, determined that the Municipal Home Rule Powers Act effectively redefined the authority of a governing body of a municipality to enter into longer term governmental function contracts with employees, and specifically ruled that a city council was empowered to "enter into contracts for employment of persons performing governmental functions for periods of time extending beyond the term of office of the members of the council themselves." Id., at 410. In Town of Indian River Shores v. Coll, supra, at 55, citing the Tweed decision, the district court held that "absent some Charter or Ordinance limitation, a city council, or a mayor if so authorized, can contract for a period of excess of its term."
It must be cautioned, however, that the city may not improperly delegate or contract away its authority, discretion and policy control which are obligations inherent in the nature of the city's police power. See, City of Belleview v. Belleview Fire Fighters, supra. Such governmental powers are by nature nondelegable and may not be contracted away or delegated to private persons, organizations, or corporations. See generally, Adoue v. State,408 So.2d 567, 570 (Fla. 1981); City of Safety Harbor v. City of Clearwater, 330 So.2d 840, 841, 842 (2 D.C.A.Fla., 1976); Chase v. City of Sanford, 54 So.2d 370, 373 (Fla. 1951); State ex rel. Taylor v. City of Tallahassee, 177 So. 719 (Fla. 1937); AGO 83-64, Question 13. Compare, Smith v. Board of Commissioners of Roads and Revenues of Hall County, 259 S.E.2d 74 (Ga. 1979), which concluded that a county commission had the authority to enter into a contract with an Arizona corporation to provide fire protection, first aid, emergency rescue and related services to a county fire district; City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla. 1983), holding that providing day-care educational facilities served a valid municipal purpose rationally related to the health, morals, protection and welfare of the municipality, and that therefore, since no constitutional, general or special law provision prevented the city from contracting with a nonprofit organization to provide day-care service, the city was authorized to do so under its home rule powers. And see, Ch. 73-600, Laws of Florida, which created the Pinellas County Fire Protection Authority as a county-wide authority empowered to establish and implement a permanent plan of fire protection for Pinellas County, in conjunction with the discussion, in another context, in AGO 83-1 concluding that a volunteer fire company participating in such plan was not a state or local governmental agency and that an agreement between the volunteer fire company, a private nonprofit corporation, and the county fire protection authority whereby the corporation agreed to provide fire protection services as authorized and contemplated by Ch. 73-600 did not in and of itself constitute a delegation of the fire protection authority's governmental or legislative powers to the private organization. Any such contract between the municipality and a private corporation may not delegate to the corporation or its officers or employees any authority to enforce the municipal and state fire prevention codes or any local ordinance or state law pertaining to the prevention and control of fires; nor delegate the authority to enforce the laws and rules of the State Fire Marshal as provided in s 633.121, F.S.
Other matters which must be dealt with in providing for municipal fire protection and emergency rescue services to city inhabitants and property owners by contract with a private corporation include but are not necessarily limited to the following. The requirements of Ch. 401, F.S., the Florida Emergency and Nonemergency Medical Services Act, must be complied with by the private corporation. The provisions of Ch. 175, F.S., dealing with municipal firefighters' pension plans and trust funds and the termination and distribution thereof should be reviewed. And see, s 175.101, F.S., establishing a two-percent excise tax on property insurance premiums in order to fund pension benefits to firefighters in conjunction with s 175.361, F.S., dealing with termination of the plan and distribution of the trust fund. Finally, the city should make provision for its continued liability pursuant to the waiver of sovereign immunity contained in s 768.28, F.S. Some sort of indemnification agreement between the city and the private corporation might be appropriate with provisions contained in the contract that the private corporation will indemnify the city for any loss or liability it might be subjected to as a result of the execution or performance of the contract entered into between the city and the private entity. Cf., City of Jacksonville v. Franco,361 So.2d 209 (1 D.C.A.Fla., 1978). Also, provision should be made for adequate liability insurance to be carried by the private entity.
In conclusion, it is therefore my opinion, unless and until judicially determined to the contrary, that a municipality has home rule power to contract with a private corporation for the purpose of providing fire protection and emergency medical services to the inhabitants and property owners of the municipality, provided there is no improper delegation or contracting away of the municipality's governmental powers or its police power, or its power to enforce the municipal and state laws or codes and rules pertaining to the prevention and control of fires or other local or state laws and regulations.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General